WORLD BROADCASTING SYSTEM, INC. V. CLARK BASS ET AL.

No. A-7282. Decided November 18, 1959.
(328 S.W. 2d Series 863)

*Wear & Wells* and *D. Wells*, of Paris, for petitioner.

The Court of Civil Appeals erred in not holding that respondents, who were respectively President and Secretary-Treasurer of a Delaware corporation and its principal stockholders, were not liable to petitioner for the debt, later reduced to judgment, owed by said Delaware corporation to petitioner on a written contract when they sold all of their stock to others under a contract providing for the dissolution of their corporation and the transfer of all of its assets to a new Texas corporation; in not holding that respondents were personally liable for the obligation as trustees of the assets of the Delaware corporation for the benefit of its creditors; in not holding that respondents actually desolved the Delaware corporation through the Texas corporation, as their designated agents for that purpose, and in not holding that the cash proceeds of the sale of the corporate assets is the equivalent of such assets and that respondents are still receiving the cash proceeds of the sale of the corporate assets of the Delaware corporation to the detriment of its creditors. Woodward v. Ortiz, 150 Texas 75, 237 S.W. 2d 286; Pierce v. United States, 255 U.S. 398, 65 L. Ed. 697, 41 Sup. Ct. 395; Love v. Gamer, 64 S.W. 2d 393, W. E. dismissed: Naham v. J. R. Fleming & Co., 116 S.W. 2d 1174; Davis v. Hemming, 101 Conn. 713, 127 Atl. 514, 39 A.L.R. 133.

*Alan B. McPheron*, of Durant, Okla., and *Tibby Wright*, of Bonham, for respondent. In reply cited Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Texas 43, 24 S.W. 16, 22 L.R.A. 802; McGee v. Ferguson Seed Farms, 34 S.W. 2d 338.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit for debt brought by petitioner against Clark Bass, Mary Jane McPheron and *pro forma* against her husband, Allan B. McPheron, respondents. Judgment was rendered for the respondents by the trial court and plaintiff appealed to the Court of Civil Appeals. The Court of Civil Appeals affirmed the trial court, 322 S.W. 2d 390.

We hold the action of the Court of Civil Appeals was error and reverse and render this cause in favor of World Broadcasting System, Inc.

In 1954 Bass, Mrs. McPheron and one Stinson were the sole stockholders of Bonham Publishing Co., Inc., a Delaware corporation. On November 10, 1954, these parties in their individual capacities entered into a contract of sale with one Paul Miller whereby they sold all of their stock in the Delaware corporation to Miller, or to a corporate entity to be formed by Miller, for the sum of $20,000 cash and a note in the amount of $67,500.00 payable to Bass and Mrs. McPheron in monthly installments. Such note was secured by a chattel mortgage on "the identical chattels now owned by the Delaware Corporation," and by a pledge of all of the capital stock of the new corporate entity to be formed by Miller. The contract further bound Miller to *"desolve"* the Delaware corporation as soon as he had secured a charter for the corporate entity he agreed to organize. The contract is set out in full in the opinion of the Court of Civil Appeals. The sale was to be closed on December 31, 1954, and Miller was to take possession on January 1, 1955.

In accordance with the agreement between the parties, Miller secured a charter in Texas for Bonham Publishing Company, Inc. (hereafter called the Texas corporation) prior to December 31, 1954. On the closing date, Bass, Stinson and Mrs. McPheron transferred all the capital stock and all assets of the Delaware corporation to the Texas corporation. The stockholders of the Texas corporation elected new directors for the Delaware corporation, and these new directors immediately instituted action resulting in dissolution of the Delaware corporation on January 12, 1955. The cash payment for the purchase price was made to respondents and Stinson and the note executed payable to Bass and Mrs. McPheron. Neither Stinson nor the Texas corporation were made parties to this suit and no complaint is made thereof.

On October 7, 1952, petitioner, World Broadcasting System, entered into a contract with the Delaware corporation to supply certain radio broadcasting material and services to a radio station then owned by the Delaware corporation. The Delaware corporation thereafter sold the radio station and the purchaser agreed to make the payments due to World. On December 1, 1953 the assignee defaulted in its payments.

On February 13, 1956, World recovered a judgment against

the Delaware corporation in the sum of $2,960.43 and costs. No appeal was taken from that judgment, and it became final. The record does not reflect when the petition in that suit was filed. This present suit was filed December 28, 1956 against Bass and the McPherons.

1 World, petitioner herein, pleaded the facts of the sale and there is no dispute as to the facts surrounding the sale nor that the proceeds of the sale were received by Bass, Mrs. McPheron and Stinson individually rather than by the Delaware corporation. By the sale contract and its consummation, the Delaware corporation was denuded of its assets and the purchase price for the assets paid to respondents. Respondents have deprived creditors of the Delaware corporation of any funds from which creditors can collect their claims. Respondents having received these funds are liable to creditors of the Delaware corporation to the extent of the funds received. Pierce v. United States (1920), 255 U.S. 398, 65 L. Ed. 697; Davis v. Hemming (1925) 101 Conn. 713, 127 Atl. 514, 39 A.L.R. 133; State of Indiana v. The City of Greencastle, (1942), 111 Ind. App. 640, 40 N.E. 2d 388. See also National Bank of Jefferson v. Texas Investment Co., et al (1889), 74 Texas 421, 12 S.W. 101; Love v. Gamer, Texas Civ. App. 1933, 64 S.W. 2d 393, wr. dism. While the two Texas cases are not exactly in point on the question we have before us, their reasoning sustains the liability of Bass and Mrs. McPheron to World.

2 In the Pierce case, supra, all of the assets of Waters Pierce Oil Co. were sold to another corporation and all proceeds from the sale were paid to Waters Pierce stockholders. The U. S. government later recovered judgment for a fine against Waters Pierce for violation of the Elkins Act. The indictment under which the fine was recovered was pending untried at the time of the sale of Waters Pierce stock and assets. After recovery of the fine the government brought suit against the stockholders to collect the fine. In holding the stockholders liable the Court said:

"The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts. The corporation cannot disable itself from responding by distributing its property among its stockholders, and leaving remediless those having valid claims. In such a case the claims, after being reduced to judgments, may be satisfied out of the assets in the hands of the stockholders * * *.

"* * * But when a corporation divests itself of all its assets by distributing them among the stockholders, those having unsatisfied claims against it may follow the assets, although the claims were contested and unliquidated at the time when the assets were distributed. * * * A corporation cannot, by divesting itself of all of its property, leave remediless the holder of a contingent claim, or the obligee of an executory contract, * * * or the holder of a claim in tort, * * * and there is no good reason why the United States, with a claim for penalties, should be in a worse plight."

Davis v. Hemming, supra, is a case with facts strikingly similar to those in the case at bar. Hemming and other stockholders of Eagle Knife Company sold all of the property and assets and endorsed the stock certificates to Winchester Repeating Arms Co. The purchase price for the stock was paid to Hemming and three others and they in turn distributed same to the stockholders in proportion to stock ownership. Knife Company was solvent at the time of sale. Previous to this sale one Davis, a salesman for the Knife Company, had a claim against the Knife Company for services. He secured a judgment on his claim some two years after the sale and distribution of assets. Davis was unable to collect his judgment against the Knife Company. He then filed suit against Hemming et al, and the Winchester Company, seeking to collect his judgment. The trial court gave judgment against all defendants including the Arms Co. All appealed and the appellate court reversed the judgment against the Arms Co. on the ground that it had paid a valuable consideration for the stock and assets of Knife Company, and was a bona fide purchaser and had no duty to see that the proceeds of sale were applied by Hemming, et al to the payment of the Knife Company's debts. Hemming and the receiving stockholders were held liable to Davis for the amount of the judgment. In the course of its opinion the Connecticut Supreme Court of Errors said:

"In the instant case, the Knife Company, its officers and stockholders, made a sale upon ample consideration of all the property of the corporation, and distributed the purchase price, the equivalent of the assets, among the stockholders, who then had acknowledged that the plaintiff claimed that the Knife Company was indebted to him. Such a distribution of the assets of a corporation among stockholders was unlawful as to any creditor injured thereby, and he may proceed, by an appropriate suit against such stockholders, to enforce the payment of this claim against the corporation."

In the City of Greencastle case, supra, the officers and directors of the Greencastle Water Works Company sold the stock of the Company to the City of Greencastle, Indiana, and received all the proceeds of the sale.

As in our case, the title to the Water Works was taken by the individual third party acting in behalf of the City, and later he transferred to the City all he had received. The State of Indiana had certain claims against Water Works, and filed suit against the officers and directors to recover its claims. Judgment in the lower court was adverse to the State and it appealed. In discussing liability of the stockholders of Water Works for the debt, the Court said:

"The appellees, [stockholders] however, seek to avoid the application of these rule of law by contending that there has been no distribution to them of the assets of this corporation. The appellees contend that all they did was to sell their stock, for which they received payment. The appellees, however, in asserting this position, cannot escape the fact that they were also the officers and directors of the Greencastle Water Works Company. They knew, as officers of this corporation, that all of its assets were being sold to the City of Greencastle. They knew that in this transaction the stockholders were receiving in cash the full value of such assets. By the transfer of their stock to intermediaries or agents of the purchaser, their resignation as directors, and immediate appointment of such intermediaries or agents as new directors for the sole purpose of executing deeds and bills of sale by which the assets of the corporation are transferred to the purchaser, such stockholders have effected the sale of the corporate assets. By this indirect method they seek to obtain the full value of the corporate assets at the expense of its general creditors. Such result cannot be permitted."

Here Bass and Mrs. McPheron sold and transferred all of their capitol stock in the Delaware corporation. Had this been the extent of the transaction, they would have incurred no personal liability for the debts of the corporation because all of the corporate assets would have continued to be held by the corporation and could have been subjected in its hands to the payment of outstanding obligations. A subsequent dissolution of the corporation by the purchaser on his own initiative would not subject the sellers to liability. The sale as made, however, involved a great deal more than a transfer of the capitol stock. As a part of the transaction, Miller was to dissolve the Delaware corporation, and respondents were to have a mortgage

on all of its chattels to secure the note given for part of the purchase price of the stock. The corporation was stripped of its property as completely and effectively as if it had been dissolved and its assets appropriated by respondents. Respondents obtained benefits and advantages that would have been theirs if they had actually sold such assets to the new corporation. Although purporting to be a simple sale of capital stock, the transaction was in legal contemplation the equivalent of disposition of the corporate assets. Respondents thereby became personally liable for the outstanding debts of the Delaware corporation to the extent of its assets thus appropriated by them.

Judgments of both courts below are reversed and judgment here rendered that World Broadcasting System, Inc. recover of and from Bass and Mrs. McPheron its judgment, together with interest and costs.

Opinion delivered November 18, 1959.