H. S. GREEN et al., Appellants,

v.

A. R. CLARK INVESTMENT COMPANY et al., Appellees.

No. 16369.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 28, 1962.

Rehearing Denied Jan. 25, 1963.

Hudson, Keltner, Jordan, Smith & Cunningham, K. K. Smith and Joe Bruce Cunningham, Fort Worth, for H. S. Green, A. B. Canning, William T. Green, Earl M. Moore and E. M. Moore Investment Co.

Frank E. Crumley and R. E. Rouer, Fort Worth, for A. R. Clark Investment Co. and A. R. Clark and Bille Clark.

Stone, Parker, Snakard, Friedman & Brown, and R. F. Snakard, Fort Worth, for appellee H. R. Weissberg Corp.

MASSEY, Chief Justice.

Matters in the case on appeal are rather involved, with the most important question appearing to be whether or not a constructive trust was properly engrafted on a fund, or what remained thereof, in the

hands of the alleged trustee. We have reached the conclusion that the facts and circumstances of the case did not entitle the plaintiffs to such form of a trust, but only to an equitable lien.

Before going into the facts giving rise to the causes of action presented on trial we will state our interpretation of the law in an abstract situation.

■ Where a Texas corporation is the obligor on an obligation which is not matured, as, for example, upon a promissory note which has not become due or which is not in arrears, and where obligee, or creditor, finds that the corporation has distributed all its assets to one of its stockholders with notice, so that the corporation is insolvent or does not possess assets sufficient to discharge the obligation (to the obligee-creditor) when it shall become due, said obligee may invoke the equity jurisdiction of the district court to have it declared that the stockholder holds the assets distributed to him and still in his possession burdened by an equitable lien. Simkins on Equity, 2nd Ed., p. 350, "Equitable and Contract Liens—Further Illustrations of Equitable Liens"; Panhandle Nat. Bank v. Emery, 1890, 78 Tex. 498, 15 S.W. 23; Restatement of the Law, Restitution, p. 828, et seq., "Following Property", sec. 203, "Innocent Converter", and generally see all of Part II under said Restatement on "Constructive Trusts and Analogous Equitable Remedies".

In such a situation the obligee is not entitled to have such assets seized nor have a constructive trust engrafted thereon for a variety of reasons, the most important being because the time for the performance of the corporation's obligation has not matured and the obligee would not be entitled to beneficial use of the assets nor to any increase in the hands of the stockholder to whom distributed, particularly when the obligor's status would be synonymous to that of an innocent converter. See generally 116 A.L.R. p. 270, et seq., Anno. "Jurisdiction of equity to sequester,

seize, enjoin transfer of, or otherwise provisionally secure assets for application upon money demand which has not been reduced to judgment"; 13 Am.Jur., p. 818, "Corporations", see sec. 804, "(Alienation of Property)—Effect of Prejudice to Creditors"; Restatement of the Law, Restitution, p. 828, et seq., "Following Property", sec. 203, "Innocent Converter".

We do not perceive there to be any reason, legal or equitable, to qualify the abstract statement in a case where the distribution of the assets of a corporation to its stockholder involved an innocent conversion by the latter, or was one wherein the obligee-creditor either consented to the distribution or contracted that it might be done in advance with actual or implied knowledge that corporate insolvency would result. In particular would this be true where the obligee's agreement for the distribution made was qualified by a provision that the stockholder should receive the distributed assets "subject to the corporation debts". Neither would the fact that the obligee might hold security in the form of liens on real or personal property, to secure the performance of the obligation when it matured, qualify the abstract statement. The position of the obligee-creditor would not be as well secured after such distribution as before, and therefore it should not be said that "adequate provision" had been made for the discharge of the corporation's obligation as applied to that not yet matured, within the meaning of V.A.T.S., Texas Business Corporation Act, Art. 6.11, "Articles of Dissolution." In this respect see comment of the Bar Committee under the article.

Let us take the stated abstract situation further, and assume that the obligation (as, for example, a promissory note) did become due and was matured. A confessedly owed liquidated claim, or a claim reduced to judgment in favor of the obligee-creditor and against the insolvent corporation, would support a decree engrafting a trust upon the assets received by and remaining in the hands of the stockholder to whom they had

been distributed. Assuming a proper showing could be made in a suit for declaratory judgment brought by an obligee against the stockholder, such a right might be authorized to be declared even in advance of the time for the obligation to become matured.

Reverting to the abstract situation as stated, and assuming a dispute, it would be the right of the obligee to maintain a suit for declaratory judgment to have it judicially declared whether (in view of the distribution) the corporation remained personally obligated to him, whether the stockholder became personally obligated to him, and whether the stockholder became personally obligated to the corporation. We believe the corporation would remain and continue to be personally liable to the obligee-creditor in the same manner and to the same extent as would have been the case had the corporation been an individual, for in this the corporation had bound itself by contract. The stockholder would be personally liable to the obligee-creditor because he received the corporate assets knowing that to do so would render the corporation insolvent. The stockholder would be personally liable to the corporation for the same reason, it being through the corporation that it would be liable to such creditor.

Upon the maturing of the obligation the stockholder's personal liability to the obligee-creditor could be reduced to judgment .if and in the event satisfaction of the obligation be not readily discharged by the corporation or someone for it, to the extent of the value of the corporate assets which were distributed to said stockholder, and without regard to whether all or any part of the assets so distributed remained in his hands or had been declared subject to an equitable lien. World Broadcasting System, Inc. v. Bass, 160 Tex. 261, 328 S. W.2d 863. If the stockholder receiving the assets were also a director of the corporation there would be no factual question upon the matter of notice and knowledge of the corporation's insolvency, and he would be chargeable therewith as a matter of law.

The suit out of which the appeal arose was instituted in the district court of Tarrant County by plaintiffs H. S. Green, William T. Green, A. B. Canning, and Earl M. Moore, who will be hereinafter termed plaintiffs as a matter of convenience, with occasional reference to one or more of them by name. Additional plaintiffs in the suit, as filed, were E. M. Moore Investment Company (a corporation which had succeeded to most of the rights of co-plaintiff E. M. Moore) and the Florida Management Company, a corporation. Florida Management Company may be disregarded for purposes of the opinion. The rights and interests of E. M. Moore Investment Company, being merely by succession to those of Moore, will be settled by what is hereinafter held as to the rights of plaintiffs when considered collectively. As finally resolved the case became one for construction of contract, for declaratory relief, and for appropriate equitable relief in view of the contractual construction, contractual reformation, and declaratory relief anticipated. There were other phases of the case in which other parties sought relief, as by defendants' cross-actions against these plaintiffs and against one another. We will describe these matters at later stages of the opinion where such additional phases of the case will be discussed.

By the suit as originally filed primary defendants were P. Frank Lake, Secretary of State for Texas, and the gentlemen who were the then Assistant Secretary and the Chief of the Charter Division, since plaintiffs sought to enjoin the issuance of a certificate of dissolution of a Texas Corporation, and the caption of the case bore the name of Mr. Lake in his official capacity, along with other defendants. By the time the case reached the point of judgment in the trial court the position of these gentlemen as parties became relatively unimportant in that it is only by implication that the Secretary of State is affected by the judgment. Further, by the time the case had been appealed by plaintiffs those defendants of importance were A. R. Clark

Investment Company, a corporation, (hereinafter termed Investment Company), A. R. Clark, an individual, and his wife Bille (for convenience hereinafter merely termed Clark although the wife is included), and the H. R. Weissberg Corporation (hereinafter termed as Weissberg or Weissberg Corporation).

We have, therefore, caused the caption and title under which the opinion is to be published to show H. S. Green et al., as appellants and to show A. R. Clark Investment Company et al., as appellees. Plaintiffs are before us as appellants in respect to the parts of the trial court's judgment of which they complain, just as Clark Investment Company and Weissberg are in fact appellants, or cross-appellants, as to the denial of certain relief sought in the trial court and as to relief granted against them. Weissberg Corporation was a defendant as applied to relief against it sought by Clark and in this court it is in the position of an appellant complaining of the amount of attorney's fees awarded against it and in favor of Clark, while in other respects its position is that of a co-appellee along with the Investment Company and Clark.

For approximately two years prior to March 7, 1961, the Clark Investment Company owned certain real and personal property known as Western Hills Hotel. Investment Company was a corporation whose stock was wholly owned and held by Clark and his wife. We will hereafter speak of the Investment Company ownership as merely that of Clark. Before Investment Company became the owner of the hotel it was owned by plaintiffs and Clark, each holding 20% ownership or 20% of all the shares of stock representing ownership. Simply stated, the mechanics by way of which Investment Company became the owner was for each of the plaintiffs, along with Clark, to transfer the 20% interest of each over to said company. This was accomplished as the result of contracts and for the exchange of consideration reflected

therein, material parts of which we will state.

Contractual obligations assumed by Clark and/or Investment Company, incident to the transaction by which Investment Company became the owner of Western Hills Hotel properties and Clark the owner of all the stock in Investment Company, included:

(1) Execution and delivery by Investment Company of promissory notes to each of the four obligee plaintiffs in the principal sum of Two Hundred Seventy-five Thousand Three Hundred Seventy-five Dollars ($275,375.00) a grand total of One Million One Hundred One Thousand Five Hundred Dollars ($1,101,500.00). These notes were to bear interest at the rate of 5.2% per annum; the interest only to become due and payable during the first five (5) year period; interest, and an amount on the principal balance owing sufficient to amortize the principal amount equal to 1% per year during the second five (5) year period; interest, and an amount on the principal balance owing sufficient to amortize the principal amount equal to 2% per year during the second ten (10) year period; with the entire principal balance remaining to become due at the end of the entire twenty (20) year period.

(a) The notes were secured by a second lien on the realty, i. e., the Western Hills Hotel premises, and also by a second lien on the personal property used in the operation of the hotel. The notes referred to the chattel mortgage on said personal property and provided that in the event of default in the payments provided to be made thereon that the holder or holders thereof should have the option of maturing the notes, in which event the indebtedness due thereon and reflected thereby would become immediately due and payable. The chattel mortgage securing the notes provided that the mortgagee(s) might declare all of the indebtedness evidenced thereby immediately due and payable in the event the mortgagor should, without written consent, sell or

surrender the possession of said personal property. The collection of attorney's fees, if necessary to be incurred in the collection of said indebtedness, was also provided.

(2) That Clark would assign and transfer his personal 20% interest in Western Hills Hotel, Incorporated, to Investment Company (without consideration from Investment Company, but by reason of the acts, agreements and other considerations on the part of the plaintiffs), with the result that all of the properties of the Western Hills Hotel would be owned by Investment Company. The Investment Company would be owned by Clark. Said hotel properties would be burdened with indebtedness to two lending agencies. The first of these was the Prudential Life Insurance Company, said indebtedness being secured by first lien on all the hotel properties. The second of these was, and would be, the plaintiffs individually and collectively on the notes heretofore described, secured by second lien on all the same properties.

(3) That Clark and Investment Company would, so long as any sum of money remained unpaid on the Investment Company notes to plaintiffs, afford said plaintiffs the right of "first refusal" to purchase the whole of the stock of Investment Company or the physical assets of the Western Hills Hotel, should an offer be received therefor from a third party and Clark and Investment Company desire to sell. In other words plaintiffs were granted the right to be informed as to the terms of any offer for the hotel upon which Clark or Investment Company desired to act in disposing of the same either by way of transfer of stock or delivery of the physical property itself, and, if they desired individually or collectively to take such in the place and stead of the third person who had made an offer, such was their right.

(4) Agreement by Investment Company that so long as any sum of money remained unpaid on note or notes given plaintiffs payment of "compensation" to Clark or any other person who might have, directly or indirectly, any interest in the ownership of the hotel facility would be restricted to the grand total amount of Twenty-five Thousand Dollars ($25,000.00) per year, whether by way of dividends, salaries, expenses or otherwise,—except that said amount could be increased to Fifty Thousand Dollars ($50,000.00) if the hotel property was being maintained in a first-class condition,—and provided that reasonable compensation for services rendered pursuant to operating the hotel facility might be otherwise and additionally paid to an individual even though he might have an interest in the ownership of Investment Company or Western Hills Hotel.

(5) That Investment Company would "make no change in its capital structure without the prior written consent of Sellers, provided, however, Company may distribute to Clark all of its assets subject to its debts."

The contract between plaintiffs and Clark was consummated by the incorporation of Investment Company, its execution and delivery of the notes, liens, mortgages, etc., coupled with the delivery to Investment Company all the stock theretofore owned by plaintiffs and Clark in Western Hills Hotel, Incorporated, so that Investment Company became the owner of the whole of the hotel properties, said properties comprising the whole of Investment Company's assets. Clark, of course, was and became the owner of Investment Company through his ownership and possession of its stock.

After Investment Company had owned and operated Western Hills Hotel for approximately two years Clark received an offer to purchase the real and personal physical assets of the hotel. Such offer was made by Weissberg Corporation. In accordance with the obligation incumbent upon Clark and Investment Company the plaintiffs were informed of the terms of Weissberg's offer, that the sale was desired to be made, and the opportunity afforded plaintiffs and any of them to purchase on the same terms as contemplated to be made by the sale to Weissberg. In writing, plaintiffs certified the fact that they consented to the

sale to Weissberg (subject to certain conditions immaterial to our consideration) and that they did not desire to exercise their prior option to purchase.

Sale was consummated to Weissberg. It went into possession of both the real and personal properties which had formerly belonged to Investment Company, being all of the real and personal properties theretofore comprising the whole of the assets of Investment Company. Weissberg did not assume any personal obligation to plaintiffs on the second lien notes given plaintiffs by Investment Company, but its purchase was provided to be "subject to" the mortgages outstanding against both the real and personal property received as part and parcel of the purchase made. In other words, as applied to the interests of the plaintiffs, Weissberg recognized that plaintiffs each held mortgages on the real and personal properties received from Investment Company, secured by mortgage lien second only to that of the insurance company which held the first lien. Circumstances rendered it obvious that Weissberg was obliged to perform in behalf of Clark and/or Investment Company, or assure itself that Clark and/or Investment Company performed all the obligations and duties theretofore assumed by them in their contract with plaintiffs. Any failure therein would expose Weissberg to hazard of plaintiffs' imposition of rights and penalties therein provided. Most important, of course, would be plaintiffs' prospective right to accelerate their second lien notes, coupled with right to foreclose their mortgage liens.

What is said in the paragraph preceding is of particular importance in the case. After the consummation of the transaction whereby Investment Company sold and Weissberg purchased, plaintiffs became fearful for the security of their debt. One reason therefor was founded in the realization that the Prudential Life Insurance Company indebtedness, secured by lien first and superior to their own, was for a great deal of money. Realizing this they feared that in the event of any forced sale of the

Western Hills Hotel properties it would be possible that the price realized therefrom would be insufficient to discharge all the liability evidenced by their notes after the rights of the prior lienholder were discharged. Furthermore they lacked confidence that Weissberg's operations of the hotel would match the standard of efficiency maintained during the period it was operated by Investment Company and Clark, and feared that the hotel properties would become depreciated and "run down" so that in the event of a forced sale of the hotel properties at a future time, after values thereof were depreciated, they might receive nothing whatever.

Coupled with these fears was an additional factor of concern to plaintiffs. They learned that Clark had transferred and distributed to himself, as stockholder, all of the Investment Company's assets, and was preparing to "wind up" the affairs of Investment Company and dissolve the same without planning to apply any part of these assets to the indebtedness evidenced by their notes, or to supply (additional) security for payment when due. Plaintiffs decided to seek a declaration by a court of their rights, and also all relief at law and in equity that might be warranted under the changed and changing circumstances, dating from Investment Company's sale to Weissberg.

Concerning the action taken by Clark to dissolve Investment Company as a corporation, it is noticed that on April 14, 1961, Investment Company filed in the Office of Secretary of State of Texas, a statement of intention to dissolve as a corporation. On April 25th following, its articles of dissolution were filed. There is no question, and it is a fact, that Investment Company ceased to do business as a corporation.

Investment Company failed to cause the delivery of written notice of intent to dissolve to each known creditor of and claimant against it, nor did it pay, satisfy or discharge all of its liabilities and obligations.

We believe that Investment Company's statement to the Secretary of State,

in the articles of dissolution, that "All debts, obligations and liabilities of the corporation have been paid and discharged or adequate provision has been made therefor," was an incorrect statement in that adequate provision was lacking in behalf of the plaintiffs on their debt to the extent provided by their contract(s) or provided by law in the absence of contract. We believe that "adequate provision" would mean that plaintiffs would be as secure after the dissolution of the corporation as they were immediately prior to the dissolution. It should be remembered that the contract provided that assets of the Investment Company might be distributed to Clark "subject to its debts", which, under applicable rules of law, we hold applied to the corporation's assets, whether in the form of that property initially contemplated as of the time the parties contracted, or as they might exist should there be a change in form. Clark being both a director and a stockholder of Investment Company, the assets of which were distributed to him, would hold same "subject to its debts", whether he specifically agreed to do so or not, under the circumstances of this case.

In our consideration of the circumstances, by reason of which we reach such conclusion, we will review the financial condition of Investment Company.

With certain liberties taken, for the sake of simplification, and disregarding distribution of corporation assets to clark, Investment Company's financial status immediately before the distribution may be considered as having these assets:

| | |
|---|---|
| Cash | 65,117.52 |
| Bonds | 279,399.43 |
| Notes Receivable: | |
| H. R. Weissberg Corporation | 148,305.54 |
| Accounts Receivable | |
| H. S. Green | 2,400.00 |
| William T. Green | 2,400.00 |
| A. B. Canning | 2,400.00 |
| E. M. Moore | 2,400.00 |
| Total Assets | $502,422.49 |

and having liabilities as follows (here we disregard the debt to Prudential Life Insurance Company, on which Investment Company was personally liable. The debt was secured by a first lien on Western Hills Hotel.) :

| Notes Payable: | |
|---|---|
| H. S. Green | $ 275,375.00 |
| William T. Green | 275,375.00 |
| A. B. Canning | 275,375.00 |
| Earl M. Moore (successor in interest E. M. Moore Investment Company) | 275,375.00 |
| | $1,101,500.00 |

It may readily be observed from the foregoing statement that Investment Company appeared to be insolvent, in the sense that its liabilities were greater than its assets, even before the assets were distributed to Clark. Such a conclusion might be erroneous, however, when note is taken of the fact that the sale had been made to Weissberg "subject to" the second lien mortgages to plaintiffs. Solvency of Investment Company would depend upon the value of the security.

It should be remembered that Weissberg owned the hotel and the incident right to remain in possession, undisturbed, so long as those payments falling due under the aforesaid mortgages were promptly paid and other obligations of Clark and Investment Company were satisfied. The obligation to make the payments was on Investment Company as its personal liability, Weissberg not having assumed any personal responsibility.

Should Weissberg become dissatisfied with the hotel it would be at liberty to "walk off" and leave it, refusing to maintain on a current status the mortgage notes on which Investment Company was liable. Of course, should Weissberg do this it would take as its loss the consideration it had paid for the hotel, plus the total amount it paid on the mortgages. (The note to Investment Company, on which it was per-

sonally liable, should be added as part of its loss.) Plaintiffs had no personal recourse against Weissberg on their notes.

In the event Investment Company did not meet subsequent payments provided by the notes, plaintiffs could foreclose on their mortgages and have a sale of the hotel and property made by the sheriff pursuant to court order, with any deficiency in the debt owing them constituting a mere personal indebtedness of Investment Company;— and, if the debt thus owing still remained unsatisfied, furthermore, constituting a personal indebtedness against any and all stockholders of Investment Company to whom any of Investment Company's assets might have been distributed, to the extent of the value of assets so distributed. If any of said assets, so distributed, could be physically ascertained, they could either be seized and subjected to forced sale, with proceeds applied on the indebtedness still owing, or a trust might be engrafted thereon for the benefit of the creditor.

As hereinabove set out, the statement makes it appear that Investment Company, having ceased to do business, might be factually found to be solvent or insolvent immediately prior to the distribution to Clark. The trial court, as the finder of fact, was entitled to find either way under all the circumstances of the case.

We will state our reasons for the conclusion. The notes payable to plaintiffs were not due and presently payable and the total assets, particularly those constituted by the cash and bonds, were sufficient to enable it to reenter into possession of the hotel should Weissberg abandon it, or to take other action in protection of itself and its creditors or for and in behalf of itself and/or its creditors should Weissberg fail to satisfy Investment Company's personal obligations by making the payments on the mortgage notes as they fell due. Equity would be available for such a purpose if necessity therefor should arise. It was the opinion of the trial court, and is also our own, that Investment Company was

and should be treated as solvent until it distributed its assets to Clark so that it became unable to protect itself and its creditors as discussed in this paragraph.

But should Investment Company denude itself of its assets or so much of the assets that it could not protect itself and its creditors in such event, the court, sitting as the chancellor, could treat said corporation as insolvent. It was the opinion of the trial court, and also our own, that it was and should be treated as insolvent when its assets were distributed to Clark. This would be so even though plaintiffs had contracted and consented in advance that there might be such a distribution.

Our conclusion might have been different had plaintiffs contracted that the distribution of the assets to Clark might be made "free of any claim by plaintiffs thereupon, or by reason thereof" or that plaintiffs' sole security on their notes would forever be restricted to their second lien mortgages. Such had not been agreed to.

■ The author, in attempt to insure a correct understanding by all who have recourse to this opinion, here takes occasion to state that what is held is that plaintiffs are entitled to relief by way of an equitable lien completely aside from and unrelated to any provision of the contract of the parties. They would be entitled to the same relief had there been no contract. Furthermore, it is our holding that plaintiffs are neither entitled to a decree of constructive trust nor equitable lien under their contract. Thereunder they are entitled only to the declaratory judgment rendered by the trial court, amended by us only in a very minor respect and concerning restriction on annual amounts which can be taken out of Western Hills Hotel profits. We will qualify this statement by stating that they were also entitled by reason of their contract to the injunctive relief preventing further action toward corporate dissolution, etc. This the trial court did grant by its judgment. Of all this more will be said later.

■ Before we begin a discussion of the parties' rights under contract, and in emphasis of our conclusion that in matters most material plaintiffs' entitlement to relief is other than by reason of any contractual provision, we suggest that note be taken from what we have heretofore discussed that the distribution of the assets to Clark resulted in Investment Company's total inability to protect itself and plaintiffs in the event Weissberg should decide to "walk off" and leave the hotel. Hence there was a material diminution of their security The most common creditors are the banks of this country. The best security on a loan is the reputation for responsibility of him who pledges his personal obligation to repay the same, not the mortgage lien he might also tender as additional security. It is likewise with a corporate debtor. A corporation, and its directors, might be said to owe the duty to preserve itself and its ability to pay its creditors. Certainly the positive duty is owed creditors to refrain from any destruction of the corporation without their consent, where such would be likely to result in a loss to them, or even to so weaken or alter its capital responsibility or structure as to reduce the likelihood of debt payment.

Since equity would properly treat Investment Company as insolvent (apart from considerations of contract) in view of the distribution of all of its assets to its director and stockholder Clark, with no adequate provision having been made in the protection of plaintiffs, as its creditors (i. e., they were not as well secured after the distribution to Clark as they were before such distribution), plaintiffs are entitled to an equitable lien on the assets remaining in Clark's hands. In this respect reference is made to the abstract situation set out in an early part of this opinion.

In said part of the opinion it is made clear that Investment Company continued to be personally liable to plaintiffs, and Clark to Investment Company and plaintiffs, upon the obligations of plaintiffs' notes as same accrued.

By judgment of the trial court a constructive trust was engrafted upon the assets distributed by Investment Company and found, at the time, in the hands of Clark. It is our holding that a constructive trust was improper, but that an equitable lien was proper. Had an equitable lien been impressed upon these same assets, rather than a trust engrafted, the trial court would have been granting relief of the same general character within the greater limitation of that relief which was awarded. Therefore we believe this court should reform the judgment and reduce the relief erroneously granted to that lesser included relief deemed proper in the circumstances. We will, therefore, reform the judgment so as to impress the assets remaining in Clark's hands with an equitable lien. Plaintiffs did pray for such form of relief.

As has been observed there would have been no question but that engraftment of a constructive trust upon such assets would have been proper were plaintiffs entitled to mature their claim under their notes and rightfully be claiming the right to present payment. Plaintiffs strongly contend for the right to accelerate and mature the indebtedness under the contractual agreement.

We proceed to those rights of the parties determinable in view of the contractual relationships existent between them.

In the trial court's findings of fact and conclusions of law, it was held that plaintiffs could not mature the notes on any ground sounding in contract. A material contention upon which plaintiffs' claim was thus predicated lies in provisions ordinarily found in promissory notes and accompanying chattel mortgages. The notes given plaintiffs provided that in the event of the failure of the obligor thereon to perform any of the agreements in the chattel mortgage, the holders of the notes should have the option of maturing the same, whereupon they should at once become due and payable. The mortgage securing these notes provided that so long as the possession of the mortgaged property, the per-

sonal property of the hotel, was permitted to remain with the mortgagor it should not be sold without the written consent of the mortgagee, and that if the mortgagor without the consent of the mortgagee should surrender the possession of any of said property to another or others, or sell any part thereof, the mortgagee, at its option, might declare all of the indebtedness to be immediately due and payable.

■■ The trial court held that plaintiffs having consented in writing that Western Hills Hotel could be sold that there was included therein their consent that the personalty covered by the chattel mortgage be delivered as part and parcel of the sale. This finding and holding on the part of the trial court was within its province as the finder of fact. Plaintiffs' contest made upon the finding and holding was predicated upon the fact that they did not know of their own rights under the terms of the chattel mortgage and could not have waived the right of requiring a consent in writing to the sale. It appears from the record that the chattel mortgage was prepared by plaintiffs' own attorney, who necessarily had knowledge of what he had prepared. We believe and hold that the knowledge on the part of plaintiffs' attorney amounted to knowledge and notice as a matter of law on the part of plaintiffs themselves. Furthermore, at all material times the chattel mortgage was filed of record with the County Clerk of Tarrant County, and plaintiffs were therefore charged with notice of their own rights under the recording statutes. Plaintiffs further contend that the pleadings against them did not raise the affirmative defenses of waiver and estoppel, but we believe that a fair construction of the pleadings refutes their contention in this regard. Plaintiffs, with knowledge of the sale to Weissberg, continued to accept monthly payments made on the notes for over six (6) months prior to complaint in assertion of a right to accelerate the notes.

■ Plaintiffs found a further contention that they are entitled to mature the notes upon the premise that the distribution of Investment Company's assets to Clark rendered it insolvent, and that this entitled them to a foreclosure by virtue of the provisions in the Deed of Trust executed to secure the notes, in addition to the mortgage security on the personal property of the hotel. The provision under which the contention is made is to be found in standard forms of deeds of trust generally reading "in case of the insolvency of the undersigned" (him who executes the deed of trust, in this case Investment Company). In the test to be made under the contention advanced, it is to be remembered that by the contract entered into between plaintiffs and Clark (and by construction Investment Company would also be treated as a party to the contract), the plaintiffs had expressly consented to the very distribution of Investment Company's assets upon which they found their contention of a right to mature the notes. Considering this the trial court concluded that Investment Company was not "insolvent" within the meaning of the parties and as expressed by the provision relating to insolvency in the deed of trust. The finding and conclusion on the part of the trial court was correct and it could not properly be said that plaintiffs are entitled to mature the notes on such contractual ground.

■ We have heretofore, at an earlier part of this opinion, listed by paragraphs numbered (1) to (5) inclusive contractual obligations which were assumed by Clark and/or Investment Company pursuant to the transaction by which Investment Company became the owner of Western Hills Hotel properties and Clark the owner of all the stock in Investment Company. In the paragraph we numbered (4) is the language limiting and restricting the annual "compensation" which could directly or indirectly be paid to Clark or any other person having an interest in the ownership of the hotel to Twenty-five Thousand Dollars ($25,-000.00), or in any event to Fifty Thousand Dollars ($50,000.00). In the paragraph numbered (5) is the language which provided that Investment Company could make

no change in its capital structure without the prior written consent of plaintiffs, *"provided, however, Company may distribute to Clark all of its assets subject to its debts."* (Emphasis supplied.) Plaintiffs found a further contention of entitlement to mature the notes upon the premise that one or both said provisions were breached, whereby right to mature the notes became vested.

A case determined since June 14, 1927 (from which date those Courts of Civil Appeals opinions in which petitions for writ of error "refused" outright became as authoritative as opinions of the Supreme Court) was that of Crumley v. Ramsey, 1936 (Tex.Civ.App., Waco), 93 S.W.2d 191, error refused. The court, in passing upon a contention that the terms of a note authorized the acceleration of maturity said: "In the beginning, it should be noted that a contract to thus accelerate the maturity of a debt gives a remedy that is harsh in its nature, and provision therefor, in order to be effective, should be clear and unequivocal; and, if there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid the forfeiture and prevent acceleration of the maturity of the debt."

In the instant situation the trial court applied the principle of law so announced, and concluded that the whole of the agreement between the parties, including that of paragraphs (4) and (5) to which we have referred, disclosed that said agreement did not clearly and unequivocally grant to plaintiffs the right to accelerate the notes, and that there was a reasonable doubt as to the meaning of the terms employed. The court's finding and conclusion was that the distribution made by Investment Company to Clark (resulting in the financial condition of Investment Company which was a necessary incident of such distribution) was not the pay of "compensation" inhibited by the parties' contract. In this we believe, and it is our holding, the trial court was correct.

Concerning the matter of effecting a change in Investment Company's capital structure it is to be noted elsewhere in this opinion that such a change was intended by Clark and Investment Company but never consummated. It is true that these parties are contending in this court as in the trial court for right to so change the capital structure and the question of whether they are entitled to do so without prejudice to their rights under the contract with plaintiffs is involved in the declaratory phase of the trial court's judgment. We have held against the contentions of Investment Company and Clark in this respect, and that the trial court was correct in enjoining further *prosecution of action directed toward the* accomplishment of any dissolution of Investment Company. Therefore the event in which plaintiffs would found contention that they would have an additional right to mature their notes has never occurred, but was merely formerly in prospect but prevented by their timely action in the trial court. We agree with the trial court that a dissolution of Investment Company would effect a change in its capital structure, inhibited by the contract between the parties.

■ What we have hereinabove discussed discloses our holdings relating to the more material complaints of plaintiffs because the trial court did not award them additional relief. What we have heretofore discussed also discloses necessary holdings as to most complaints made by Investment Company and Clark. In addition thereto is their complaint of the adjudication that Investment Company was not entitled to dissolve and cease to be a corporation, and of the orders incident thereto mandatorily enjoining and directing Clark and Investment Company to consent to the revocation of all voluntary dissolution proceedings undertaken, to execute and verify a statement of revocation of said proceedings, and to deliver forthwith to the Secretary of State duplicate originals thereof.

The trial court was correct in all these holdings. Its declaration of plaintiffs' rights were in accordance with the law as applied to facts found upon adequate evi-

dence. As heretofore discussed the steps taken to dissolve Investment Company as a corporation were void and ineffectual in that the statutory procedure for dissolution was not followed. See V.A.T.S., Texas Business Corporation Act, Art. 6.06, "Procedure After Filing of Statement of Intent to Dissolve", and Art. 6.11, "Articles of Dissolution". Furthermore the agreement of the parties in the contract, pursuant to which Investment Company delivered its notes to plaintiffs, provided that said corporation should not change its capital structure. A dissolution of a corporation constitutes the most radical change in the capital structure thereof. The action of the trial court was proper.

■ H. S. Green, one of the plaintiffs, individually and separately, complains because the judgment of the trial court denied him his claimed right, under a separate contract with Investment Company and Clark to have and receive the sum of $100.00 per week after Investment Company's sale to Weissberg. The trial court, construing the contract, concluded that Green's right to compensation thereunder ended upon the sale. In this the court did not err.

Pertinent portions of the contract provide: "For a period of ten (10) years, H. S. Green agrees to devote as much as one-half (1/2) day each week advising and counseling in connection with the operation of the Western Hills Hotel facility. . . . H. S. Green shall receive a salary of $100.00 per week for these services and the salary shall be paid by A. R. Clark Investment Company so long as it owns the Western Hills Hotel facility, and by A. R. Clark, if he individually becomes the owner of the hotel facility."

Under competent evidence the trial court, as the finder of fact, concluded that there was no mutual mistake in the wording of the contract, whereby the court might reform the same, and that it was the mutual understanding of the parties that Green's services thereunder would come to an end in the event the hotel should be sold to any third party prior to the expiration of the prescribed contractual period.

■ Furthermore, we believe that Green was not in position to maintain suit for the relief claimed, having himself breached the contract. After Weissberg bought the hotel Green neither performed nor tendered any performance under the contract up until the time suit was filed. A party who is himself in default on a contract cannot maintain a suit for its breach.

■ The judgment of the trial court awarded the sum of $20,000.00 as attorney's fees in behalf of Clark and against Weissberg. Weissberg contends that the amount was excessive. We do not agree that the amount awarded was excessive and overrule the point in which the contention is presented.

Award of the attorney's fee was predicated upon contractual provisions incident to the sale of Western Hills Hotel to Weissberg. The sale was prescribed as having been made subject to the liability, if any of Investment Company and Clark on the notes held by plaintiffs, and to the liability, if any, to H. S. Green on the employment contract hereinabove discussed. Thereon Weissberg agreed to protect and hold harmless Investment Company and Clark from any and all liability in connection with the aforesaid obligations, "including, but not by way of limitation of, all expenses and attorneys' fees in connection therewith or incident thereto."

When the suit was filed the plaintiffs made Weissberg a party defendant. Weissberg filed pleadings in its own behalf and apparently in derogation of any responsibility to defend plaintiffs' suit as against Investment Company and Clark. Indeed, Clark was apparently compelled to sue Weissberg for the reasonable value of the services of his attorney on a cross-bill in the same suit. Clark's pleadings were countered by a general denial on the part of Weiss-

berg with no claim of any tender of an attorney's services, and no admission of any character of obligation owed Clark.

It is true that a substantial part of plaintiffs' suit against Investment Company and Clark was predicated upon the contention that they were liable because of the insolvency and attempted dissolution of the corporation. Suit in this respect fell without the provisions of Weissberg's agreement to indemnify Clark. However, plaintiffs sought to impose liability under their theory of the contractual obligations as well. This part of the suit came under the indemnity agreement. In view thereof substantially the same amount of legal services became necessary to be performed, and even if the part which would not have become necessary could be segregated it would not comprise more than 10% or 15% of the total of the services which were rendered.

Furthermore, we believe the trial court recognized that not all the attorney's services rendered in behalf of Investment Company and Clark would fall within the indemnity obligation of Weissberg. In the conclusions of law made by the court it is stated: "A. R. Clark is entitled to recover of and from H. R. Weissberg Corporation the sum of $20,000.00 as attorneys' fees." The court did not state that the value of the services rendered Clark by his attorneys was said amount. Impliedly the court held that "of the services rendered Clark by his attorneys, such of them as fell within the indemnity provisions of Weissberg's contract were of the value of $20,000.00."

We have made a test upon an important group of complaints made by plaintiffs directed toward the trial court's calculation of the extent of Clark's personal liability. The court limited such liability, as applied to plaintiff's notes, for all sums which may become due thereunder to the amount of $327,967.98.

Clark had paid to the United States Government the sum of $106,000.00 as an estimated income tax liability, using a part of the assets distributed by Investment Company for the purpose. Had this estimated tax not been so paid the figure stated in the preceding paragraph would amount to $433,967.98 (rather than merely $327,-967.98).

Plaintiffs contend that Clark's maximum personal liability should have been declared the greater figure, to continue until plaintiffs' notes have been fully paid, satisfied or discharged. In applying tests to be made we believe that we should not lose sight of the fact that plaintiffs necessarily carried the burden of proof of facts upon which the court would rule and conclude as to the relative rights of the parties. When we do so we are of the opinion that there was evidence in the record from Clark which warranted an inference that if Investment Company be not dissolved as a corporation it would have been liable to the United States for a tax which would be equal to or in excess of the $106,000.00 paid and that said sum should not be included in the calculation of Clark's maximum personal liability to plaintiffs. It is to be remembered that plaintiffs sought to prevent the dissolution of Investment Company, and action of the trial court did effectively prevent the dissolution. Evidence in behalf of plaintiffs did not overcome the inference aforementioned, nor did such proof as we find in the record compel the finding and conclusion for which they contend, which is simply that the aforesaid tax liability was that of Clark, individually, and not of the Investment Company. Their points of error in said respect are overruled.

◼ The trial court denied the claim of Clark for damages under Clark's contention that he has suffered damages because of the court's having granted a temporary restraining order and also a temporary injunction pending trial on the merits, all of which inhibited a use of the assets distributed. The only damage alleged is that which arose by reason of the loss of use of the funds distributed by Investment Company to Clark. There was no evidence in-

troduced in proof of any damages sustained. Actually the use by Clark of the funds distributed to him was not prevented, the restraint imposed having enjoined only the Secretary of State and designated officials in his office. Points of error presenting Clark's complaint are therefore overruled.

■ The trial court imposed the duty upon Weissberg to limit the total withdrawals by it, "its successors or assigns, directly or indirectly, from the operations of Western Hills Hotel to a grand total of Twenty-Five Thousand Dollars ($25,000.-00) per year; provided, however, if the hotel is being maintained in a first-class condition, the total amount may be increased so that said total amount shall not exceed Fifty Thousand Dollars ($50,000.00) per year; and further provided, however, except for the limitation on payments to be made to H. R. Weissberg Corporation, its successors or assigns, either directly or indirectly, it is understood that reasonable compensation for services rendered may be paid to any individual, even if he may have an interest, either directly or indirectly, in the ownership of Western Hills Hotel." Of this the plaintiffs complain.

Plaintiffs contention is predicated upon the proposition that the proper construction to be given the obligation of the contracts assumed by Weissberg in connection with its acquisition of the property, coupled with the fact that it has many stockholders, makes it necessary to an award of that complete relief requisite in equity that said stockholders be included as persons restricted from withdrawals along with Weissberg. This contention of plaintiffs is sustained, and our judgment herein will reform that of the trial court so as to include the stockholders of Weissberg.

There are points of error presented by plaintiffs, Investment Company, and Clark which are not covered by our opinion. To do so would unduly lengthen it. We have severally examined points of error so presented and concluded that they should be and are severally overruled.

Accordingly the judgment of the trial court will be reformed and affirmed, with the cause remanded to the trial court in view of the obvious necessity that it perform administrative duties incident to authorizing Clark's enjoyment, use and transposition of the assets upon which an equitable lien is declared, so long as its character continues that of personal property, or until its form (by exchange) shall wholly merge into a form upon which the equitable lien to which plaintiffs are entitled may become adequately protected under recording statutes.

The judgment is reformed in the following respects:

Paragraph numbered 5, that section of the judgment which purports to impress a constructive trust upon the assets of the A. R. Clark Investment Company distributed to A. R. Clark and Bille Clark is reformed so as to read and provide: "The assets distributed to defendants A. R. Clark and Bille Clark by defendant A. R. Clark Investment Company and remaining after the payment of corporate liabilities heretofore paid, of the value of $327,967.98 at the date of distribution thereof, are chargeable with an equitable lien, as security for the payment of the four notes described in paragraph 1 of the judgment of the trial court, to the extent of the value of such assets at the time of the enforcement of such obligation, and such assets shall be held by A. R. Clark and Bille Clark charged with an equitable lien as security for the present and future owners and holders of said notes until said notes and each of them are fully paid, satisfied or discharged. That said assets in their present form are endowed with the character of a fund on which the recording of a lien would have no value or material effect, by reason of which the trial court will retain jurisdiction for administrative purposes if and in the event judgment in the case becomes final in order that any conversion thereof into property of a different character may take place under authority of an order of the court and with safeguards provided in be-

**818**

half of the present and future owners and holders of said notes until such time as there has been conversion thereof into property of a character upon which a recorded lien affords as efficient security as that afforded by this order."

That part of paragraph numbered 12, subparagraph (b), the section of the judgment which provides that H. R. Weissberg Corporation and its successors and assigns are bound and obligated with respect to limitation upon total withdrawals from the operations of Western Hills Hotel to a grand total of Twenty-five Thousand Dollars ($25,000.00) per year, etc., is reformed so as to read and provide as follows: "Defendant H. R. Weissberg Corporation and its successors and assigns are bound and obligated, by reason of the provisions of that certain Loan Agreement dated August 3, 1959, and more fully described in paragraph 6 of this trial court judgment: (b) To limit the total withdrawals by H. R. Weissberg Corporation, its successors or assigns, and any shareholder or shareholders of said corporation, so long as it owns Western Hills Hotel, directly or indirectly, from the operations of Western Hills Hotel to a grand total of Twenty-five Thousand Dollars ($25 000.00) per year; provided, however, if the hotel is being maintained in a first-class condition, the total amount may be increased so that said total amount shall not exceed Fifty Thousand Dollars ($50,-000 00) per year; and further provided, however, except for the limitation on payments aforesaid, it is understood that reasonable compensation for services rendered may be paid to any individual, even if he may have an interest, either directly or indirectly, in the ownership of Western Hills Hotel."

In all respects other than those in which judgment is so reformed it is affirmed.

In view of the necessity for administration in carrying judgment into effect upon the finality thereof, the cause is remanded to the trial court for appropriate administrative action.