INESCO, INC., Trans-Mex Leasing Company, and Elmer J. Gray, Appellants,

v.

Ross A. SEARS, Appellee.

No. 8092.

Court of Civil Appeals of Texas, Beaumont.

May 18, 1978.

Rehearing Denied June 15, 1978.

Jerry D. Patchen, Robert Eikel, Houston, for appellants.

Charles F. Browning, Van E. McFarland, Houston, for appellee.

CLAYTON, Justice.

Following our original opinion in his cause, we have granted appellant Gray permission to file his amended brief; and our prior opinion in this cause is withdrawn, and this opinion is substituted in lieu thereof.

Plaintiff below, Sears, filed this action against Inesco, Inc., Trans-Mex Leasing Company, G. & L. Tool Company, and Elmer Gray, for the recovery of $40,000 he claimed was owed on the purchase price of a barge. Trial was to the court without a jury, and judgment was entered for plaintiff, holding the defendants, Inesco, Trans-Mex, and Gray, jointly and severally liable for $40,000. Inesco, Trans-Mex, and Gray have appealed.

The evidence shows that Inesco and Sears entered into an agreement by which Inesco would buy a certain barge for a total sales price of $220,000, which included: (1) $10,000 down payment, (2) $170,000 to be paid by August 10, 1973, when title was transferred, (3) $20,000 to be paid by September 7, 1973, and (4) $20,000 to be placed in escrow by September 7, 1973, pending ascertainment of the weight of the barge. This money in escrow would be paid in full to plaintiff-seller only if the barge weighed 6,500 tons. The agreement also provided "that there are no liens or encumbrances on said Vessel." The first $180,000 was provided by Gray, who was chairman of the board of Inesco and owned fifty percent of the stock. The remainder of the sales price was never paid, and no money was ever placed in escrow. The barge was later transferred to Trans-Mex Leasing Company, a subsidiary of Inesco. Following a dispute among the shareholders, the barge was transferred to Gray in exchange for all of his stock in Inesco and Trans-Mex.

At the close of the evidence the trial judge allowed both parties to amend their pleadings. In his trial amendment plaintiff

alleged, *inter alia,* that Gray was the alter ego of the corporations.

Extensive Findings of Fact and Conclusions of Law were filed. The court found, *inter alia,* that Gray was the undisclosed principal on the contract of sale from plaintiff; that Gray was the alter ego of Inesco and Trans-Mex; that the transfer to Gray was made to defeat the plaintiff's rights under the contract; and that the question of the weight of the barge had been waived by the defendants.

▉ Defendant Gray's first point complains that the trial court erred in "finding the barge was subject to an equitable lien . . . and in allowing recovery upon such lien." The trial court entered judgment against "Defendants Inesco, Inc., Trans-Mex Leasing Company and Elmer J. Gray, jointly and severally, the sum of Forty Thousand ($40,000) Dollars, plus interest. . . ." This judgment is for a money judgment against these defendants and in no way recognizes or gives any effect to any purported equitable lien. Such a lien is neither an estate or property in the barge itself, nor a right of action for the barge. It is merely an encumbrance or charge against the barge. *Houston National Exchange Bank v. De Blanc,* 247 S.W. 897 (Tex.Civ.App.—Beaumont 1923, no writ). The creation of a lien on the property in favor of the obligor-creditor is merely the right to have recourse to the property for the satisfaction of the obligor's debt. The judgment making no reference to a lien, and no foreclosure thereunder being ordered or adjudged, we fail to see how defendant Gray can be harmed in any manner insofar as the findings of the trial court as to the existence of an equitable lien are concerned. This point is overruled.

▉ Defendant Gray's second point complains of error "in allowing parol testimony to alter the terms of the purchase and sale agreement . . . to impose a lien . . . and in allowing recovery upon the basis of such parol testimony."

*Tex.R.Civ.P. 418(e)* requires, as to contents of appellant's brief, the following: ". . . If complaint is made of the improper admission or rejection of evidence, the full substance of such evidence so admitted or rejected shall be set out with reference to the pages of the record where the same may be found. . . ." The statement of facts in this record consists of 439 pages, and this defendant's entire argument in his brief consists of three sentences, and not one single sentence of the "improper" evidence or any reference to any particular page in the record where same may be found is stated. We, therefore, decline to consider such point. If we did consider such point, the same would be overruled for the reasons stated under defendant's first point.

▉ We consider defendant Gray's third, fourth, and sixth points together as they are germane to the sixth point complaining of the trial court's error in allowing recovery against Gray as the *alter ego* of Inesco or Trans-Mex urging that the evidence shows as a matter of law that Gray was not the *alter ego* of either Inesco or Trans-Mex. Since the point attacks the finding "as a matter of law" it must be considered as a "no evidence" point. "In deciding a 'no evidence' point we must view the evidence in its most favorable light in support of the finding, and we must consider only the evidence and inferences which support the finding." *Lucas v. Hartford Accident and Indemnity Co.,* 552 S.W.2d 796, 797 (Tex. 1977); *accord, Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

▉ The basic rule of law cited in cases in which a plaintiff seeks to "pierce the corporate veil" is stated as follows:

"Courts will not disregard the corporate fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetuate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations."

*Bell Oil & Gas Co. v. Allied Chemical Corp.,* 431 S.W.2d 336, 340 (Tex.1968), quoting *Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 351 (1955); *accord, Sutton v. Reagan & Gee,* 405 S.W.2d 828, 836–37

(Tex.Civ.App.—San Antonio 1966, writ ref'd n. r. e.).

An excellent discussion of the *alter ego* doctrine is found in *Fagan v. La Gloria Oil and Gas Co.,* 494 S.W.2d 624 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ), in which Judge Tunks states that the doctrine should be applied in "situations wherein the corporation is not maintained as a bona fide entity, separate and distinct from its shareholders in the conduct of its own business, but rather is used as an agent or servant of the shareholders in the furtherance of their personal business. In such a situation where the corporation purportedly enters into a contract, but in doing so is in reality acting as agent for the shareholders in the furtherance of their personal business, the shareholders become liable on the contract, or for its breach, under the law of principal and agent." *Id.* at 632. In our case there is evidence that Gray had told the other shareholders-directors that he would pay the entire purchase price of the barge. Gray was the only shareholder who contributed money to Inesco, and there is evidence that he controlled all of the financial matters of the corporations. Gray provided the $180,000 required before transfer and approved the terms of the agreement. According to his own testimony, Gray originally intended to acquire title to the vessel in his own name. Instead, the title was initially in the name of Inesco and was later transferred to Trans-Mex, a subsidiary of Inesco, before being transferred to Gray in exchange for his stock in the corporations. Gray admitted that he was aware of the indebtedness on the vessel at the time of the transfer, but he claimed that it was a corporate obligation.

These facts support the findings that Gray was the principal in the contract with plaintiff and that Gray was using the corporate entity of Inesco to transact his personal business. Therefore, considering the evidence under the standard of review for a "no evidence" point, we hold that there is probative evidence to support the finding that Gray was the *alter ego* of the corporations.

■ In addition to the *alter ego* doctrine which we hold to be applicable in this case,

there is another rule permitting plaintiff to recover which is supported by the evidence and fact findings, which are unchallenged by the defendants. This doctrine was described in *World Broadcasting System, Inc. v. Bass,* 160 Tex. 261, 328 S.W.2d 863 (1959), as follows:

". . . when a corporation divests itself of all its assets by distributing them among the stockholders, those having unsatisfied claims against it may follow the assets, although the claims were contested and unliquidated at the time when the assets were distributed. . . ." *Id.* at 864-65, quoting *Pierce v. United States,* 255 U.S. 398, 403, 41 S.Ct. 365, 65 L.Ed. 697 (1921).

The Court further stated:

"Although purporting to be a simple sale of capital stock, the transaction was in legal contemplation the equivalent of a disposition of the corporate assets. Respondents thereby became personally liable for the outstanding debts of the Delaware corporation to the extent of its assets thus appropriated by them." *World Broadcasting System, Inc. v. Bass,* supra at 866.

In our case the only asset of the corporation was the barge, and Gray knew that when the barge was transferred to him, Inesco would not be able to pay the remainder of the purchase price. Gray also knew that plaintiff was demanding payment, and there was evidence that he knew that plaintiff had offered to rescind the contract if the barge was returned. Yet, in a transfer for worthless stock, he obtained title to the only asset of the corporation, leaving Inesco unable to pay the remainder of the purchase price. This evidence supports the conclusion that Gray has "denuded" the corporation of its assets so that it had nothing left with which to pay plaintiff, and therefore Gray should be held personally liable on plaintiff's claim. See *Fagan v. La Gloria Oil and Gas Co.,* supra at 632.

■ Gray's fifth point complains of error in permitting plaintiff's "trial amendment after the evidence had been closed . . . was manifest error." The trial court is

vested with discretion to allow or deny trial amendments, and the court's action in permitting a trial amendment will not be set aside in absence of a clear showing that the court has abused its discretion. *Ka-Hugh Enterprises, Inc. v. Fort Worth Pipe & Supply Co.,* 524 S.W.2d 418, 422 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.); *Tuck v. Tuck,* 509 S.W.2d 656, 658 (Tex.Civ.App.—Austin 1974, writ ref'd n. r. e.); *Tex.R. Civ.P. 66.* Since there is no showing that defendants were surprised or prejudiced by the granting of the trial amendment, no abuse of discretion is shown, and no reversible error is shown. See *Home Indemnity Co. v. Draper,* 504 S.W.2d 570, 577 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.).

▪ Defendants Inesco and Trans-Mex (in their points 2 and 3), and Gray (in his point 7) contend that the award should have been limited to a maximum recovery of $20,000 because the preponderance of the evidence establishes that the weight of the vessel was no more than 3,700 tons. The sales agreement provides:

"If the weight of the Vessel is less than 6,500 tons Buyer will receive from the $20,000 escrow account an amount equal to $34.00 per ton for each ton less than 6,500 tons. If the net weight of the Vessel is determined to be in excess of 6,500 tons, the $20,000 will be released to Seller immediately and Buyer will pay Seller an additional amount equal to $34.00 per ton for each ton in excess of 6,500 tons."

It is undisputed that no money was ever placed in escrow.

There was contradictory evidence as to the weight of the barge, and no fact finding was made on this point. The only fact findings concerning the tonnage provisions are Findings 45 and 46, which provide:

"45. The tonnage provision . . . was to provide for the event that the barge had to be scrapped rather than being sold.

"46. Inesco and Gray waived the tonnage provision of the contract when they elected to keep the barge."

These fact findings supporting the judgment have not been challenged. By finding that the defendants in action waived the tonnage provision, the trial court has made the weight of the barge a moot issue; the plaintiff was entitled to recover the entire $40,000 regardless of the weight. Therefore, no error is presented by these points which contend that the vessel weighed less than the required amount. These points are overruled.

▪ Defendants, Inesco, Inc. and Trans-Mex Leasing Company, contend also that the trial court "erred and abused its discretion in proceeding with the trial of this cause against defendants Inesco, Inc. and Trans-Mex Leasing Company while permitting these Defendants' trial counsel to absent himself from the courtroom and not participate in the trial of the cause, all without notice to these Defendants, thus depriving these Defendants of a fair trial." James Adams, the attorney of record for Inesco and Trans-Mex, was served with a subpoena duces tecum before trial and was called as a witness by plaintiff. Mr. Adams was a shareholder and director of the corporations, which were defunct at the time of trial. At the hearing on the motion for new trial, Adams testified that he and Mr. Lawrence, another director of the corporation, had agreed on his course of action during the trial. He further testified that he tried to contact Fontenot, the third shareholder and director, but was unable to do so.

*Tex.Rev.Civ.Stat.Ann. art. 1302–2.07, B* (1962) provides that ". . . the board of directors serving at the time of dissolution or the majority of them then living . . . shall continue to manage the affairs of the corporation for the limited purpose or purposes specified in this Article, and shall have whatever powers may be necessary to accomplish such purposes, including the power to prosecute, pay, compromise, defend, and satisfy any action, claim, demand, or judgment by or against the corporation . . . ." Therefore, Adams and Lawrence, constituting a majority of the directors, had authority to decide what action to take at the trial.

**832**

The corporate defendants argue for the application of the rule stated in *Lowe v. City of Arlington,* 453 S.W.2d 379, 382 (Tex. Civ.App.—Fort Worth 1970, writ ref'd n. r. e.), as follows:

> " 'Every litigant is entitled to be heard in court by counsel of his own selection. This is a valuable right, and the unwarranted denial of it is fundamental error where the litigant, without negligence or default on his part, is deprived of the right and an ex parte judgment is rendered against him.' 7 TEX.JUR.2d 73, § 33."

This case is distinguishable from the cases cited by Inesco and Trans-Mex in their brief. Those cases involved situations in which the attorney withdrew just before the trial (see, e. g., *Lowe v. City of Arlington,* supra) or the attorney was unavoidably absent at the trial. See e. g., *Arnold v. Fort Worth & D.S.P. Ry.,* 8 S.W.2d 298 (Tex.Civ.App.—Amarillo 1928, no writ).

This is not a case in which the litigant had inadequate notice of the withdrawal of his attorney, nor is it a case in which the attorney was unavoidably absent. On the contrary, the litigants in this case, Inesco and Trans-Mex, made a decision through a majority of their directors, i. e., Adams and Lawrence, not to present any defense at the trial. Therefore, Inesco and Trans-Mex have failed to establish that they were unjustly deprived of the right of counsel. This point is overruled.

No error being shown, the judgment of the trial court is affirmed.

AFFIRMED.