**A. R. CLARK INVESTMENT COMPANY
et al., Petitioners,**

**v.**

**H. S. GREEN et al., Respondents.**

**No. A–9481.**

Supreme Court of Texas.

Jan. 29, 1964.

Rehearing Denied March 4, 1964.

---

Frank E. Crumley and R. E. Rouer, Fort Worth, for petitioner.

Hudson, Keltner, Jordan, Smith & Cunningham, Stone, Parker, Snakard, Friedman & Brown, Fort Worth, for respondents.

SMITH, Justice.

This suit was originally instituted on May 1, 1961, by the plaintiffs, H. S. Green, William T. Green, A. B. Canning, Earl M. Moore, E. M. Moore Investment Company, a Texas corporation, and Florida Management Company, a Texas corporation, against the Secretary of The State of Texas, and A. R. Clark and wife, Bille Clark, to enjoin proceedings filed by the Clarks to dissolve the A. R. Clark Investment Company, a corporation.

On May 1, 1961, the trial court granted a temporary restraining order, in accordance with plaintiffs' prayer, restraining and enjoining defendants, P. Frank Lake, Secretary of The State of Texas, and his assistants, agents, representatives and employees, from issuing, and from "doing any act designed to or for the purpose of or which would result in the issuance of, a certificate of dissolution of defendant, A. R. Clark Investment Company."

On May 4, 1961, the date previously set by the Court for a hearing on the petition for injunction, the Court ordered and decreed that the restraining order entered on May 1, 1961, be continued "in full force and effect until the conclusion of the hearing of this case on the merits (without prejudice to any party's rights on the merits) subject only to the right of any party to set for hearing any of the requests of plaintiffs for a temporary injunction against any defendant at such time and upon such reasonable notice given in such manner as the Court may direct."

On September 8, 1961, the plaintiffs filed their first amended original petition wherein the H. R. Weissberg Corporation was made a party defendant. Plaintiffs prayed that the temporary restraining order granted on May 1, 1961, and the temporary injunction granted on May 4, 1961, be continued in effect until the trial on the merits or until any party requested a hearing on the prayer of plaintiffs for a temporary injunction. Such request was made by the A. R. Clark Investment Company and the Clarks, and on October 30, 1961, after a hearing, the trial court entered an order granting the temporary injunction enjoining the issuance of a certificate of dissolution of A. R. Clark Investment Company.

The plaintiffs who went to trial on their first amended original petition sought a judgment against the Clarks, the A. R. Clark Investment Company, Weissberg and the Secretary of State (1) enjoining proceedings to dissolve the A. R. Clark Investment Company; (2) accelerating payment of four promissory notes in the principal sum of $275,375.00 each; (3) foreclosing liens on all of the real and personal property of Western Hills Hotel, a hotel located in Fort Worth, Texas; (4) that

a trust and lien be impressed upon the proceeds of the sale of Western Hills Hotel which had been distributed to the Clarks.

Based on acceleration of their notes, the plaintiffs sought judgment against A. R. Clark Investment Company for (a) the full amount of their notes, plus interest and attorney's fees, and (b) foreclosure of a deed of trust, chattel mortgage and pledge agreement given to secure such notes, and judgment against A. R. Clark and Bille Clark in the amount of the value of the assets distributed to them by A. R. Clark Investment Company as the sole stockholders of said corporation.

In the alternative, plaintiffs sought a judgment declaring (a) that A. R. Clark and Bille Clark are liable to plaintiffs and to A. R. Clark Investment Company in the amount of the value of assets distributed to them by the A. R. Clark Investment Company; and (b) that the property distributed is subject to a trust or lien in favor of plaintiffs to secure the notes owned by plaintiffs.

Further, in the alternative, plaintiffs sought a permanent injunction enjoining the dissolution of A. R. Clark Investment Company and requiring the return of the assets distributed by A. R. Clark Investment Company and declaring the rights of plaintiffs as to certain terms of a loan agreement entered into between plaintiffs and A. R. Clark Investment Company to secure the payment of said notes.

In addition, plaintiffs sought the construction of certain other contracts entered into between plaintiffs and A. R. Clark and A. R. Clark Investment Company and certain contracts entered into between A. R. Clark and A. R. Clark Investment Company and H. R. Weissberg Corporation. Plaintiffs also sought damages for the breach of certain of said contracts. In the case of an employment contract entered into between plaintiffs, H. S. Green and A. R. Clark Investment Company, plaintiff H. S. Green sought a reformation

of said employment contract if the trial court disagreed with his construction of the contract. All of the essential instruments herein referred to will be discussed in greater detail later in this opinion.

The defendant, P. Frank Lake, who was sued in his official capacity as Secretary of State, his agents, representatives and employees sought no affirmative relief.

The defendants, A. R. Clark and Bille Clark, filed a cross action against plaintiffs seeking damages caused by the issuance of the temporary order based on a loss of use of the funds distributed to them by A. R. Clark Investment Company. Defendants, A. R. Clark, Bille Clark and A. R. Clark Investment Company, also filed a cross action against H. R. Weissberg Corporation under an indemnity agreement seeking judgment against said corporation for attorney's fees and also for a judgment in the amount of any judgment rendered in favor of plaintiffs against the defendants, A. R. Clark, Bille Clark and A. R. Clark Investment Company.

Defendant H. R. Weissberg Corporation filed a cross action against A. R. Clark, Bille Clark and A. R. Clark Investment Company seeking damages for the breach of certain contracts entered into between said parties.

For convenience, the plaintiffs, H. S. Green, A. B. Canning, William T. Green, Earl Moore and E. M. Moore Investment Company, shall hereinafter be referred to as plaintiffs; the defendants, A. R. Clark and wife, Bille Clark, as Clark or the Clarks; the A. R. Clark Investment Company as Investment Company; the H. R. Weissberg Corporation as Weissberg; and P. Frank Lake as Secretary of State.

The trial was to the court without the intervention of a jury. The evidence introduced is voluminous. The trial court filed 160 separate findings of fact and 49 separate conclusions of law. These findings and conclusions consume 75 pages of the transcript. The evidence necessary

to a decision bearing upon each determinative question presented in the applications for writ of error will be related and analyzed later in this opinion. However, a general statement of the facts at this juncture will perhaps lead to a better understanding of the trial court's judgment. The facts are these:

In 1951 Western Hills Hotel was completed and opened for business by Western Hills Hotel, Inc., a corporation. The stock of this corporation was owned equally by A. B. Canning, H. S. Green, William T. Green, E. M. Moore and A. R. Clark. In 1959 Clark offered to purchase the interest of his associates, the plaintiffs herein. The offer was accepted. After further negotiations Clark organized the A. R. Clark Investment Company, a corporation with a capital stock of one thousand ($1,000.00) dollars. By and under a contract of sale executed April 8, 1959, plaintiffs sold their eighty per cent (80%) interest in the stock of Western Hills Hotel, Inc., to Investment Company. Pursuant to the contract of sale, Clark contributed to Investment Company his twenty per cent (20%) stock ownership in Western Hills Hotel, Inc., and caused that corporation to be merged into Investment Company. Thus, the latter corporation became the owner of Western Hills Hotel, and Clark owned all the capital stock in said corporation.

Under the contract of sale plaintiffs were to receive $1,345,300.00 from Investment Company. This sum was to be paid in the following manner: (1) four promissory notes each in the principal sum of $60,950.-00 and payable 30 days after the closing date of the sale which were to be executed by Investment Company and delivered to each individual seller. That is, each individual seller received a promissory note from Investment Company for the above amount; (2) $1,101,500.00 of the price was to be evidenced by the execution and delivery by Investment Company of promissory notes to each of the four individual sellers (plaintiffs) in the principal sum of $275,375.00. These notes were to bear in-terest at the rate of 5.2% per annum; the interest only to become due and payable during the first five-year period; interest, plus an amount equal to 1% of principal per year payable during the second five-year period; interest, plus an amount equal to 2% of the principal per year payable during the second ten-year period; with the entire principal balance remaining to become due on July 24, 1979, 20 years from the date of the note. Each of the four notes in the principal sum of $275,375.00 were secured by a second lien deed of trust covering the land and buildings of the hotel, a second lien chattel mortgage covering all the personal property of the hotel, a loan agreement executed as part of the contract of sale, and a stock pledge agreement. The deed of trust and chattel mortgage liens of plaintiffs were inferior to first liens securing an insurance company in the payment of a promissory note executed by Investment Company in November, 1960, in the amount of $1,-340,000.00 payable in monthly installments until December 1, 1975.

After the sale of the property, Clark took over the complete management and operation of the hotel. Under the 1959 Contract of Sale plaintiffs were granted the right, so long as any sum of money were due them, of first refusal to purchase the stock of Investment Company or the physical assets of Western Hills Hotel upon the same terms and conditions as any acceptable, binding, bona fide offer that Clark might receive. In 1961 Clark did receive such an offer from Weissberg to purchase the real and personal physical assets of the hotel. Pursuant to the terms of the 1959 Contract of Sale, Clark sent to plaintiffs a copy of what he represented to be the proposed contract of sale between Investment Company and Weissberg Corporation. Shortly thereafter, Clark received a written reply from plaintiffs to the effect that they did not wish to exercise their option to purchase, and that Clark could proceed to sell the hotel, subject to certain conditions. These conditions provided that as to the

1959 loan agreement between Investment Company and plaintiffs, Weissberg must agree to perform all of the obligations incumbent upon Investment Company. Also, plaintiffs demanded that Weissberg assume and agree to perform all of the obligations incumbent upon Investment Company as to an employment contract entered into between Investment Company and H. S. Green in the 1959 Contract of Sale. A copy of the *executed* contract between Investment Company and Weissberg was then sent to plaintiffs. Investment Company transferred the real and personal property covered by the liens securing plaintiffs to Weissberg Corporation. In accordance with the terms of the *executed* 1961 Contract of Sale, the property was conveyed to Weissberg "subject to" the insurance company's first lien and the second lien held by plaintiffs. Weissberg did not assume the payment of any of the first and second lien notes. As a part of the consideration, Investment Company received $500,000.00 cash and a promissory note in the amount of $148,305.54 secured by a third lien deed of trust and chattel mortgage on the real and personal property of the hotel. After consummation of the sale, Weissberg went into possession and began operating Western Hills Hotel.

On February 28, 1962, the trial court entered its judgment disposing of all of the issues presented. With regard to the relief sought by the plaintiffs, the judgment: (1) declared that the notes of plaintiffs were and are valid and existing obligations of A. R. Clark Investment Company; (2) declared that the Clarks were and are liable to Investment Company and to plaintiffs for the value of the assets distributed to them as stockholders of Investment Company in the amount of $327,967.98, such liability to continue until the notes of plaintiffs are paid; (3) declared that the assets of Investment Company in the amount of $327,967.98 distributed to the Clarks and any increase thereof shall be held by the Clarks as constructive trustees for the present and future owners of plaintiffs' notes until the notes are fully satisfied;

(4) declared that the Clarks had the legal right to retain and not return the assets distributed to them by Investment Company, but held that the Investment Company could not be dissolved; (5) construed certain contracts between the parties in connection with the issues of acceleration of the notes, foreclosure of the deed of trust, chattel mortgage and pledge agreement; determined liability on such contracts, and denied plaintiffs acceleration of the notes and foreclosure of the liens securing such notes; (6) declared the issues raised by H. S. Green, individually, against Green; and (7) declared the issues between the Clarks and Weissberg in favor of the Clarks. The issues raised by Green, individually, and the issues between the Clarks and Weissberg are not before this court.

The Florida Management Company did not appeal. The remaining plaintiffs, as well as the defendants, the Clarks and Investment Company, duly perfected separate appeals, each alleging errors in the judgment of the trial court, to the Court of Civil Appeals for the Second Supreme Judicial District at Forth Worth, Texas.

The Court of Civil Appeals reformed the judgment of the trial court, holding there was no basis for constituting the Clarks constructive trustees, but that an equitable lien did attach in favor of the plaintiffs against the consideration received by the Clarks for the sale of the hotel. The judgment of the trial court in all other respects was affirmed. However, the cause was remanded to the trial court for appropriate administrative action consistent with the holding that an equitable lien attached. 363 S.W.2d 802.

*Acceleration*

We shall first dispose of plaintiffs' contention that they are entitled to accelerate the notes and foreclose the deed of trust, chattel mortgage and pledge agreement liens. We have concluded that plaintiffs' plea for acceleration must be sustained.

Each of the four promissory notes in the principal sum of $275,375.00 which are held by plaintiffs contain a provision giving to the holder of said notes the option of maturing them should Investment Company fail to perform any of the agreements in the 1959 deed of trust, chattel mortgage, loan agreement or pledge agreement. Plaintiffs strongly contend that Investment Company has breached various provisions of these instruments. We deem it necessary to only discuss plaintiffs' contention that Investment Company has breached a provision of the 1959 chattel mortgage securing the promissory notes.

The mortgage provided, among other things, that so long as the personal property of Western Hills Hotel remained in the possession of the mortgagor (Investment Company) it should not be sold, mortgaged or removed without the written consent of the mortgagee (plaintiffs). It is plaintiffs' position that the 1961 sale of the hotel from Investment Company to Weissberg was made without their consent. In denying acceleration of the notes on this alleged violation of the chattel mortgage, the trial court: (1) found as a fact that plaintiffs had consented to the sale of the hotel's personal property; (2) found that plaintiffs had waived their rights under the chattel mortgage to accelerate the maturity of their notes; (3) concluded that plaintiffs were estopped from accelerating and foreclosing. We shall discuss each of these questions separately.

*Consent*

The trial court in Finding of Fact No. 30 found as follows:

"The court finds that the plaintiffs did consent in writing to the sale of the property covered by plaintiffs' chattel mortgage to the Weissberg Corporation by Plaintiffs' Ex. 23 and No. 27 * * *."

The two exhibits referred to are the letters, mentioned earlier in this opinion, written by plaintiffs to Clark, one dated March 6, 1961,

and the other dated March 14, 1961. In deciding whether these two letters constituted consent, it is necessary to go into some of the negotiations for the sale of Western Hills Hotel to Weissberg in 1961.

There were several conferences between persons representing Investment Company and various of the plaintiffs prior to the dates of the above letters. Toward the end of February, 1961, Clark, his attorney, Mr. Decker, and plaintiff H. S. Green had a conference during which plaintiff H. S. Green was advised of negotiations for the sale of Western Hills Hotel. Upon being advised that a sale could not take place unless plaintiffs waived their rights under the terms of the 1959 Loan Agreement entered into between Investment Company and plaintiffs, H. S. Green answered that he personally would not be in favor of waiving such rights. Shortly thereafter, Clark went to the home of plaintiff Earl M. Moore and requested Moore to waive some of the provisions of the 1959 Loan Agreement. This request was refused. By letter, dated March 1, 1961, Clark wrote to each of the plaintiffs as follows:

"Gentlemen:

"Clark Investment Company has received a bona fide offer to sell all of its assets which are the physical properties of Western Hills Hotel.

"In compliance with my agreement with you granting you the right of first refusal to purchase the assets upon the same terms and conditions as any bona fide offer, I wish to advise you of such offer and am enclosing to each of you a copy of the proposed Contract of Sale. The purchaser advised it is ready to execute the contract and deposit $50,000 if the option, obligations and restrictions described in Sections XXIII, XXIV and XXV are deleted * * *."

A proposed contract of sale between Investment Company and Weissberg was enclosed with these letters. Under the terms

of this proposed contract of sale, Weissberg *assumed and agreed* to pay the unpaid balance as of January 31, 1961, on the four promissory notes held by plaintiffs. Sections XXIII, XXIV and XXV of the contract referred to in the above letter, were as follows: (1) Section XXIII provided that the contract of sale was subject to the prior right of first refusal on the same terms and conditions in favor of the plaintiffs; (2) Section XXIV provided that Weissberg assumed and agreed to perform all of the obligations of an employment contract entered into between Investment Company and plaintiff H. S. Green in 1959; (3) Section XXV provided that Weissberg, in purchasing the hotel, would agree to perform all obligations incumbent on Investment Company under the terms of the 1959 Loan Agreement.

After studying the terms of the proposed contract, plaintiffs wrote to Clark their letter of March 6, 1961. This letter provided in part:

"* * *

"We do not wish to exercise our option to purchase; therefore, under the 30-day time allowance we wish to officially notify you that you may proceed to sell Western Hills Hotel, subject to the following conditions:

"1. We are not willing to waive any of the restrictions outlined in sections 24 and 25 of your proposed contract of sale.

"2. Also, we wish to emphasize that all contracts, letter agreements, etc. that were entered into between you, your various companies, and us at the time of the sale of Western Hills Hotel to you, are to be made a part of your proposed sale to any purchaser * * *."

On the same day this letter was written, and prior to its receipt, Investment Company and Weissberg prepared and bound themselves to an *executed* contract of sale.

This executed contract, which did not include the conditions set out by plaintiffs in their letter, differed radically from the proposed contract of sale. Whereas the proposed contract provided that Weissberg was to assume and agree to pay plaintiffs' notes, the executed contract provided that the sale was made *subject to* the mortgages in favor of plaintiffs so that Weissberg was not personally liable on these notes; and whereas the proposed contract obligated Weissberg to assume and agree to perform all of the obligations of plaintiff H. S. Green's employment contract and the 1959 Loan Agreement, the executed contract provided that the sale was being made *subject to* the terms and provisions of these agreements.

On March 10, 1961, Clark sent to the plaintiffs a letter, enclosing the executed contract of sale, and giving plaintiffs notice of their opportunity to exercise their prior right of purchase. After studying the terms of this contract, plaintiffs wrote their letter of March 14, 1961. This letter, which was addressed to Clark, read in part as follows:

"* * *

"We wish to take this opportunity to advise you that we do not desire to exercise our prior right to purchase."

The sale of the hotel from Investment Company to Weissberg was thereafter consummated.

■ When plaintiffs wrote the letter of March 6, they had been asked by Clark to consider only the *proposed* contract of sale between Investment Company and Weissberg. Therefore, it is clear that everything in this letter had reference to the sale of the hotel set forth in this proposed contract. When plaintiffs, under the terms of this letter, conditionally consented to a sale of the personal property covered by the chattel mortgage, they necessarily were consenting to the provisions of the proposed contract. It cannot be said they were consenting to the sale which was actually made

because that sale was materially different from the one they had been asked to consider. A consent to a particular sale is not a consent to any sale. Furthermore, plaintiffs had specifically conditioned their consent. Such a conditional consent given to the sale of personal property covered by a chattel mortgage does not give authority to sell unless the condition is fulfilled. See Oats v. Dublin National Bank, Tex.Com.App., 127 Tex. 2, 90 S.W.2d 824. In the present case, the executed contract of sale between Investment Company and Weissberg did not satisfy the conditions set out by plaintiffs.

■ With regard to the letter of March 14, 1961, a simple reading of the letter shows that no consent to the sale of the personal property was given therein. Under the terms of the 1959 contract and chattel mortgage, plaintiffs had two rights. First, they had the right to purchase the property under the same terms and conditions as the contract of sale; and second, they had the right to refuse to consent to a sale of the personal property covered by the chattel mortgage, and to accelerate their notes and foreclose if such a sale was made without their consent. By declining to exercise their right of first refusal in the March 14th letter, plaintiffs did not relinquish the right they had to refuse to consent to the sale. There is nothing, expressly or impliedly, in plaintiffs' letter of March 14, which purports to be a consent to the sale of the personal property of Western Hills Hotel.

■ Apart from the two letters written by plaintiffs, the trial court also found that Investment Company, and Clark individually, were authorized to sell the property of the hotel under the terms of the 1959 Contract of Sale. This contract clearly does recognize the possibility of a sale, in that it grants to plaintiffs a right of first refusal to purchase on the same terms and conditions as any bona fide offer. However, the contract does not authorize *any* sale of the

hotel, merely because plaintiffs might refuse to exercise this option.

We hold that none of the above instruments constituted a written consent on the part of plaintiffs to the sale actually made of the personal property of Western Hills Hotel covered by the 1959 chattel mortgage.

*Waiver*

The trial court also concluded that plaintiffs were not entitled to accelerate their notes and foreclose, based upon a breach of the chattel mortgage, because plaintiffs had waived such right. It should be emphasized at the outset that, under the terms of the chattel mortgage, plaintiffs were given the right to accelerate payment on their notes should the personal property covered by the mortgage be *sold* without their written consent. Therefore, plaintiffs were granted no right of acceleration which they might assert or waive until a *sale* was made. The sale from Investment Company to Weissberg was consummated on April 4, 1961. What did plaintiffs do or fail to do after this date?

First, in regard to what plaintiffs did to indicate they did *not* intend to waive their right to accelerate: The trial court found that each of the plaintiffs did not know, prior to April 6, 1961, that he had the right under the chattel mortgage to accelerate his note by virtue of a sale of the property covered by the chattel mortgage. On April 13, plaintiffs' attorney informed Clark's attorney that in his opinion plaintiffs had the right to accelerate their notes. Plaintiffs thereafter repeatedly informed both Clark and Weissberg that they were entitled to accelerate their notes on several grounds, one being that the provisions of the chattel mortgage had been breached. Then, on August 17, 1961, plaintiffs wrote letters to Investment Company, Clark and Weissberg advising that they had accelerated the maturity of the notes.

■ In regard to plaintiffs' actions after April 4, 1961, which allegedly showed an

intent on their part to waive their right to acceleration, the following occurred: First, the lawsuit was originally instituted on May 1, 1961, against the Secretary of The State of Texas and the Clarks to enjoin the dissolution of Investment Company. However, as heretofore noted, it was not until September 8, 1961, that the plaintiffs filed their first amended original petition wherein Weissberg was made a party defendant and plaintiffs sought to accelerate the payment of their notes. This delay must be viewed in the light of all the surrounding circumstances. The trial court found that there were settlement negotiations between plaintiffs and all parties including Weissberg, almost continuously from the date this suit was initially filed until at least August 1, 1961. At such settlement negotiations the possibility that plaintiffs might have to accelerate their notes was many times mentioned, as were the grounds on which such acceleration would be based. One such ground was that Investment Company had breached the terms of the chattel mortgage. Thus, it is undisputed that plaintiffs repeatedly asserted their right to accelerate unless some form of settlement could be reached. After settlement efforts failed, plaintiffs decided to accelerate their notes and so informed Investment Company, Clark and Weissberg by letters dated August 17, 1961. It is clear that plaintiffs' delay in making Weissberg a party defendant to this suit and seeking to accelerate payment of their promissory notes did not constitute a waiver of their right of acceleration.

The notes in question provide for the payment of interest only during the first five years, and it is undisputed that following the sale plaintiffs received and accepted monthly checks from Weissberg in payment of the interest due under the terms of said notes. It is the position of Clark and Weissberg that by accepting these installment payments, plaintiffs waived their right to accelerate.

This jurisdiction has never directly passed upon this question. However, we find that other jurisdictions in passing upon the question have almost uniformly held that the acceptance of installments due on a note is not a waiver of the right of acceleration when the right of acceleration arises out of some breach *other than* the failure to make an installment payment when due. See Luke v. Patterson, 192 Okl. 631, 139 P.2d 175, 148 A.L.R. 679; Federal Land Bank of New Orleans v. Mulhern, 180 La. 627, 157 So. 370, 95 A.L.R. 948. See also Annotations 53 A.L.R. 525, 529; 148 A.L.R. 686, 696; 36 Am.Jur. 889, § 402. We adopt the view thus expressed. There is no reason why the acceptance of the installment payments by plaintiffs, which were admittedly due and payable, should constitute a waiver by plaintiffs of an entirely different right given them under the terms of the chattel mortgage, particularly when the payments were made while plaintiffs, as seen above, were asserting this right to accelerate, unless a settlement was agreed upon.

### Estoppel

The trial court also concluded that plaintiffs were estopped to assert their right to accelerate the notes because of a breach of the chattel mortgage.

The Clarks and Weissberg contend that plaintiffs should be estopped because of their actions prior to and after the sale was consummated.

In regard to plaintiffs' conduct prior to April 4, 1961, only two acts can be pointed to as a basis for estoppel—the letters written by plaintiffs on March 6 and March 14. In regard to the letter of March 6, plaintiffs stated they did not desire to purchase on the basis of the proposed contract of sale sent to them for consideration, and that Investment Company could proceed with the sale, subject to two specific conditions. Thereafter, upon receiving a copy of the *executed* contract of sale, which differed materially from the proposed contract, plaintiffs wrote their letter of March 14 stating merely that they did not want to

purchase on the basis of this executed contract.

. Weissberg contends that plaintiffs should be estopped because their letter of March 6 did not even intimate that plaintiffs' consent was qualified in any such manner as would require an additional consent for the sale of the property. Weissberg argues that plaintiffs were under a duty to advise it if they did not intend for this conditional consent to apply to the sale as finally made. There is a simple answer to this argument. An element of estoppel is that the party claiming the estoppel must show that a false representation or concealment of material facts exists. Furthermore, the party to whom such false representation was made must have relied on or acted on it to his prejudice. See Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. There is no evidence that any representative of Weissberg ever read, saw or even knew about the letter of March 6. It necessarily follows that the conditional consent given by plaintiffs in the letter was not relied on or acted on by Weissberg to its prejudice.

 The position of Weissberg with respect to the letter of March 14, in which plaintiffs did nothing more than decline to exercise their right of purchase, involves no more than estoppel by silence. Weissberg argues that this letter should be grounds for the estoppel of plaintiffs from accelerating because it "does not contain any possible intimation that a written consent to the sale of the personal property was expected." It must be recognized that the principle of estoppel by silence arises where a person, who by force of circumstances is under a duty to another to speak, refrains from doing so and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice. See Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582; Waggoner v. Dodson, 96 Tex. 415, 73 S.W. 517. Plaintiffs had the right to accelerate the maturity of their notes if the personal property of Western Hills Hotel covered by the chattel mortgage was sold without their consent. In writing their letter of March 14, plaintiffs were under no duty to warn Weissberg that it was about to breach the provisions of the chattel mortgage.

Weissberg at least had constructive knowledge of plaintiffs' potential right to accelerate, inasmuch as the chattel mortgage had been specifically referred to in its contract of sale. If Weissberg wanted to protect itself, the burden was on Weissberg to obtain plaintiffs' consent. This it did not do. At no time, from the beginning of the negotiations until after this suit was filed, did any representative of Weissberg ever contact any plaintiff. The only contact at all between plaintiffs and Weissberg was plaintiffs' letter of March 14. This letter, as heretofore noted, did not constitute a consent to the sale actually made.

 Insofar as the Clarks are concerned, the record clearly discloses that they did not rely on the plaintiffs' letters, either separately or together, as constituting a consent to the sale that was actually made. Unlike Weissberg, the Clarks did read the March 6 letter. However, they necessarily knew that everything in this letter had reference only to the sale set forth in the *proposed* contract of sale which they had sent to the plaintiffs on March 1, and that the conditional consent evidenced by this letter was limited to the terms of said proposed contract. Furthermore, the Clarks are in no position to contend that the plaintiffs should have protested in their letter of March 14, if they did not intend for their conditional consent to extend to the sale actually made. The Clarks have argued throughout this cause that they did not think it was necessary to obtain plaintiffs' consent before making a sale of the property. It has been the Clarks' position that the only requirement they had to fulfill prior to a sale was to give plaintiffs a prior right to purchase on the same terms and conditions as any bona fide offer. Since the Clarks were not even concerned with whether or not plaintiffs consented to the sale, they

obviously did not rely on plaintiffs' letters as an indication of consent.

■ It is finally contended by the Clarks and Weissberg that the plaintiffs are estopped to assert their rights under the chattel mortgage because of their conduct after April 4, 1961, the date the sale between Weissberg and Investment Company was consummated. As seen above, after Weissberg took over management and control of the hotel, it began tendering payments of interest due on plaintiffs' promissory notes, which payments were accepted by plaintiffs. During the periods these payments were being made, negotiations for a settlement were in progress between all the parties. At such settlement negotiations, plaintiffs repeatedly asserted their belief that they were entitled to accelerate their notes because the personal property covered by the chattel mortgage had been sold without their consent. By merely accepting the regular interest installments, which were admittedly due and payable, the plaintiffs were not guilty of any false representation which was acted on, by either Weissberg or the Clarks, to their prejudice.

■ This court recognizes that a contract to accelerate the maturity of a debt gives a remedy that is harsh in nature, and provision therefor, in order to be effective, should be clear and unequivocal. See Motor & Industrial Finance Corporation v. Hughes, 157 Tex. 276, 302 S.W.2d 386. In the present case, the promissory notes held by the plaintiffs do clearly provide that payment of the notes may be accelerated in the event of the failure to perform any of the agreements in the 1959 Chattel Mortgage. One provision of this instrument unequivocally states that the personal property of Western Hills Hotel covered by the mortgage should not be sold without the written consent of the plaintiffs. In 1961 Investment Company did sell this property to Weissberg without obtaining the plaintiffs' written consent. We hold there is no reason why the plaintiffs should not be able to enforce their contractual right and accelerate payment of their notes because of this violation of the chattel mortgage terms.

The principal relief sought by plaintiffs was for acceleration of the payment of their promissory notes and foreclosure of the liens securing them. As part of that relief, plaintiffs further prayed for a judgment declaring the Clarks liable to plaintiffs and to Investment Company in the value of the assets distributed to them by Investment Company, and for a judgment declaring that the property so distributed is subject to a constructive trust or equitable lien in favor of plaintiffs, to secure the notes held by plaintiffs.

### Personal Liability of the Clarks

■ The rights of creditors with respect to the property and assets of a dissolving corporation have always been recognized at common law and in equity as superior to the rights of shareholders. See Panhandle National Bank v. Emery, 78 Tex. 498, 15 S. W. 23; World Broadcasting System, Inc. v. Bass, 160 Tex. 261, 328 S.W.2d 863.

Plaintiffs contend that the above general rule is specifically applicable to the present case, and conclude that when Investment Company distributed the proceeds of the sale of Western Hills Hotel to the Clarks, its sole stockholder, the Clarks thereby became personally liable to them to the extent of the value of the assets so distributed.

The 1959 Contract of Sale specifically authorized Investment Company to distribute to Clark all of its assets subject to its debts. In construing this language the trial court held, and the Court of Civil Appeals affirmed, that the above provision granted Investment Company "the right at any time to distribute any or all of the assets of said corporation of any type, *including the proceeds of a sale of Western Hills Hotel,* to A. R. Clark subject to the debts of the corporation."

Clark contends that the courts below have erroneously construed the meaning of the

term "assets." It is Clark's position that the term, as used in the contract, was intended to refer only to the real and personal property of Western Hills Hotel. He argues that since all of Investment Company's assets were sold to Weissberg in 1961, the proceeds of the sale which he received could not also be considered "assets" of the corporation within the meaning of the 1959 Contract of Sale. Therefore, Clark concludes that he has not received any corporation "assets." We do not agree.

■ It is undisputed that when a corporation (such as Investment Company) receives consideration for a sale of its assets, this consideration is generally looked upon as also being a corporate asset. There is no reason to suppose the parties to the contract intended a different meaning unless there is something in the contract itself, or in the circumstances surrounding its execution, to show an intent to use the term in a different sense, for the instrument alone, if unambiguous, will usually be deemed to express the parties' intent, since it is objective and not subjective intent that controls. See Ohio Oil Company v. Smith, Tex., 365 S.W.2d 621.

■ No attempt will be made herein to set forth the various provisions of the 1959 Contract of Sale that makes reference to the "assets" of Investment Company. However, from a reading of all the provisions of the contract, it clearly appears that the term "assets" was not intended to be limited to the real and personal property of Western Hills Hotel. The parties did not use these terms interchangeably.

■ This court has held that a corporation cannot disable itself from responding for its debts by distributing its assets among its shareholders and leaving without remedy those having valid claims. In such a case, we have held that a creditor injured by such distribution of assets may proceed by an appropriate suit against such stockholders, to enforce the payment of its claim against the corporation. See World Broadcasting

System, Inc. v. Bass, supra. The plaintiffs, as corporation creditors, did not contract that the distribution of assets to the Clarks was to be made "free and clear" of any claim by plaintiffs. Instead, the plaintiffs' consent to a distribution of assets was qualified by a provision that the corporation stockholder, Clark, should receive the distributed assets "subject to the corporation debts."

The Clarks are personally liable to plaintiffs to the extent of the funds received. See World Broadcasting System, Inc. v. Bass, supra; Pierce v. United States, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697. See also National Bank of Jefferson v. Texas Investment Co., 74 Tex. 421, 12 S.W. 101; Love v. Gamer, Tex.Civ.App., 64 S.W.2d 393, wr. dis'm.

### Extent of Personal Liability

Investment Company actually distributed to Clark and wife a total amount of $502,-422.49. The Clarks paid certain obligations of Investment Company out of this sum of money, and the courts below have given the Clarks credit for the amount so paid in determining the maximum amount of their liability. Plaintiffs attack the trial court's and Court of Civil Appeals' action in allowing Clark credit for the sum of $106,-000.00 paid by him as estimated income tax. By allowing this credit, the Court of Civil Appeals has determined the personal liability of the Clarks to be $327,967.98. Plaintiffs contend that the courts below erred in allowing the Clarks credit for this $106,000.00, and therefore their maximum liability should have been $433,967.98. We do not agree.

■ With respect to the contention here under consideration the trial court in its findings of fact said:

"$106,000.00 of the assets of A. R. Clark Investment Company that were distributed to A. R. Clark, individually, and to Bille Clark, were paid by them to the U. S. Director of Internal

Revenue as income tax. In connection with the sale of this hotel facility by this company to Weissberg Corporation, the A. R. Clark Investment Company would have incurred a liability for income taxes in an amount at least equal to such sum had the company assets not been distributed to Clark. The distribution of this company's assets to Clark and wife was made in an effort to diminish the tax liability that Clark and his wife or their company would incur by virtue of the sale of the hotel to Weissberg Corporation. Actually this income tax liability which was paid by this sum was the liability for tax that was incurred by virtue of the income to the corporation from the sale to the Weissberg Corporation. This item was paid by Clark after April 25, 1961."

Plaintiffs argue that there is no evidence in the record to support the above finding. We do not agree. Inasmuch as there is *some evidence* on which the trial court could base its finding, it follows that the courts below have correctly limited the maximum personal liability of the Clarks, as applied to plaintiffs' notes, to the amount of $327,967.98.

There is one other question which must be considered in order to fully understand the judgment to be entered in this cause. Simultaneous to entering into the executed contract of sale between Weissberg and Investment Company, Weissberg entered into an indemnity agreement with the Clarks. By letter of March 7, 1961, the President of Weissberg Corporation wrote to the Clarks, in part, as follows:

" * * * The undersigned does hereby agree to indemnify and hold harmless A. R. Clark and Bille B. Clark from any loss or liability on the referenced notes [the promissory notes held by plaintiffs] or to H. S. Green, Wm. T. Green, A. B. Canning and E. M. Moore Investment Company, or their heirs or assigns on said notes, that might arise by reason of the contemplated liquidation of A. R. Clark Investment Company, provided you promptly notify the undersigned of any such claim and give it an opportunity to defend."

In the trial of this cause, the Clarks filed a counter-claim against Weissberg, based in part on the above letter, praying that Weissberg be adjudged obligated and bound to indemnify the Clarks from any loss or liability suffered by them that might arise by reason of the contemplated liquidation of Investment Company. During the process of liquidation Investment Company distributed $502,422.49 to the Clarks. Because of this distribution, the trial court held the Clarks to be personally liable on plaintiffs' notes to the extent of $327,967.98. Since this personal liability arose out of the attempted dissolution of Investment Company, the final judgment of the trial court provided that:

"H. R. Weissberg Corporation, by reason of its indemnity letter of March 7, 1961, is and shall remain liable to defendants A. R. Clark and Bille Clark for any liability which may be adjudged hereafter against said A. R. Clark and Bille Clark or either of them, or their heirs or assigns, on any of the four promissory notes [held by plaintiffs] * * *; and the present or future holders or owners of said notes or any of them shall be entitled to enforce the liability of H. R. Weissberg Corporation hereunder."

The trial court judgment also provided that Clark should have and recover against Weissberg the sum of $20,000.00 as and for his attorney's fees.

On appeal, Weissberg complained only of the trial court's action in awarding the $20,000.00 to Clark's attorney, contending such amount was excessive. Weissberg did not complain of that part of the trial court judgment ordering it to indemnify the Clarks for any liability incurred by them on the four promissory notes held by plaintiffs, therefore that judgment became final.

Furthermore, since Weissberg has not brought forward any complaint of the Court of Civil Appeals' action in affirming the trial court's judgment awarding $20,000.00 to Clark's attorney, this issue has also been finally decided adversely to Weissberg.

Inasmuch as plaintiffs are entitled to accelerate the payment of their promissory notes, Investment Company is presently liable for the full amount due on said notes, including principal, interest and attorney's fees. Plaintiffs are also entitled to foreclose the liens securing these notes. In the event a sale of the property covered by the liens does not satisfy the payment of the notes, any deficiency remaining unsatisfied shall constitute a personal indebtedness of Clark and wife, such indebtedness not to exceed $327,967.98. If personal liability is incurred by Clark and wife on said notes to the extent of any part of the amount of such notes for which Clark and wife have been decreed to be personally liable, then Weissberg shall be obligated to repay such sum to Clark and wife.

The judgments of the trial court and Court of Civil Appeals are reversed, and the cause is remanded to the trial court with instructions to enter judgment not inconsistent with this opinion.

GRIFFIN, CULVER, NORVELL and STEAKLEY, JJ., dissent.

CULVER, Justice (dissenting).

The Court has decided that the plaintiffs are entitled to accelerate their notes aggregating more than a million dollars, on the ground that the personal property of Western Hills Hotel was sold by Clark to Weissberg without obtaining the written consent of the plaintiffs, Green and his associates, as provided for in the chattel mortgage given by Clark to the plaintiffs, and that findings by the trial court of consent, waiver and estoppel on the part of the plaintiffs have no support in the evidence.

During the time of the negotiations between Clark and the plaintiffs, looking to the sale of the hotel to Weissberg, there was never any indication or suggestion on the part of the plaintiffs that they would insist on the payment in full of their notes if the sale was made of the furniture and other personal property. In fact, as pointed out in this Court's opinion, after the plaintiffs had read the terms of the proposed sales contract they wrote to Clark in part as follows:

"* * *

"We do not wish to exercise our option to purchase; therefore, under the 30-day time allowance we wish to officially notify you that you may proceed to sell Western Hills Hotel, subject to the following conditions:

"1. We are not willing to waive any of the restrictions outlined in sections 24 and 25 of your proposed contract of sale.

"2. Also, we wish to emphasize that all contracts, letter agreements, etc. that were entered into between you, your various companies, and us at the time of the sale of Western Hills Hotel to you, are to be made a part of your proposed sale to any purchaser * *."

By that letter the plaintiffs agreed that Clark might sell the hotel subject to the two conditions specified in the letter.

Section 24 did not refer to the contract between the plaintiffs and Clark Investment Company, nor to the Loan Agreement, but only to a letter from Clark and Clark Investment Company to H. S. and William T. Green, dated April 8, 1959, wherein Clark agreed for a period of ten years that Green would advise and counsel in connection with the operation of Western Hills Hotel and would be paid a salary of $100.00 per week for these services so long as Clark or the Investment Company owned the Western Hills Hotel. Obviously the plaintiffs had no standing to insist that Weissberg assume

that obligation. Section 25 referred to the obligation of Weissberg to perform all of the obligations incumbent upon seller under the loan agreement. As pointed out below, all of those obligations are imposed upon Weissberg by the judgment of the trial court and the Court of Civil Appeals. The plaintiffs further say that in order for condition 2 to be fulfilled the contract of sale necessarily would have required Weissberg to assume liability on plaintiffs' notes. This obligation, under the terms of the Loan Agreement or the contract between plaintiffs and Clark, the plaintiffs had no legal obligation to require.

Subsequently a contract of sale providing that the purchaser took subject to, instead of assuming payment of the notes, was executed between Clark and Weissberg. Upon receipt of a copy of that contract the petitioners then wrote to Clark advising him that they did not desire to execute their prior right to purchase.

The plaintiffs take the position that they were not aware until after the Clark-Weissberg contract was executed, that under the terms of the chattel mortgage they had the right to accelerate the payment of their notes. This chattel mortgage was prepared by their own lawyer on a printed form and placed of record. They are charged with their lawyers' knowledge and should not be heard to plead ignorance of that provision.

Findings of fact made by the trial court are in part as follows:

"* * *

"Plaintiffs learned that the sales contract between the Clark Investment Company and Weissberg Corporation had been entered into shortly after April 4, 1961. For several months thereafter they made no protest of the sale of the personalty, during which time the Weissberg Corporation paid out $500,000.00 in cash to the Clark Investment Company; made monthly payments of $11,403.40 on the first lien to the Prudential Life Insurance Company; paid $4,000.00 a month, plus

interest, to the Clark Investment Company; paid $1193.00 a month to each of the four (4) plaintiffs, and spent substantial sums in bettering the hotel. The Weissberg Corporation bought the personalty subject to the plaintiffs' lien and not in derogation of their superior claim to it as collateral.

"* * *

"Knowing in March, 1961, that Clark Investment Company was negotiating a sale to Weissberg Corporation of the entire hotel facility, including the personalty covered by the chattel mortgage, these plaintiffs all authorized H. S. Green to write to and to cause to be delivered to A. R. Clark, president of A. R. Clark Investment Company, Plaintiffs' Ex. 23, wherein they advised Clark as follows: 'You may proceed to sell Western Hills Hotel.'

"I construe this to be a consent in writing for Clark Investment Company to sell this personalty covered by the chattel mortgage.

"I conclude that all plaintiffs are charged with constructive knowledge of all the contents of the deed of trust and chattel mortgage in question, which their attorney drew for them.

"Plaintiffs on March 13, 1961, received a copy of the final contract of sale (Plaintiffs' Ex. 25) between Clark Investment Company and the Weissberg Corporation. They knew all the terms of this sale and that Clark Investment Company was conveying to Weissberg Corporation all the personalty connected with the hotel. Knowing these facts they then wrote to Clark Plaintiffs' Ex. 27 and raised no objection to the transfer of this personalty by Clark Investment Company. The Clark Investment Company and the Weissberg Corporation thereafter substantially changed their position.

"I conclude that plaintiffs have waived any right they might have had to fore-

close on the grounds that this chattel mortgage provision was breached and also that by virtue of the facts outlined here and in the findings of fact that they are now estopped from trying to foreclose the notes on that ground."

I concur in these findings and conclusions reached by the trial court and the Court of Civil Appeals on this point.

This Court has held that in this case, as a matter of law, there was no waiver of the right to accelerate. Regardless of constructive knowledge that must be imputed to the plaintiff, they did know on April 6, 1961, that this right was given by the terms of the chattel mortgage in the event of a sale without their consent. It was not until more than four months later, namely, August 17, 1961, after the contract of sale was executed, that a letter was written to Clark and Weissberg by W. T. Green notifying them that he, W. T. Green, had elected to accelerate the maturity of the promissory note payable to him and it was not until September 8, 1961, that the plaintiffs made Weissberg a party defendant to this suit and sought to accelerate the payment of their notes. In its opinion this Court says that "this delay must be viewed in the light of all of the circumstances." Of course the findings of the trial court are to be upheld, if evidence viewed most favorably, will support those findings. The Court may draw such inferences from the words and conduct of the parties as may be justified.

The contract between Green and Clark Investment Company clearly shows that all parties contemplated that a sale of the hotel properties by Clark or Clark Investment Company was possible, if not probable. In that contract the plaintiffs made but one requirement and that was their prior right to purchase upon the same terms offered to any other prospective purchaser. The right to accelerate their notes in the event of a sale of the mortgaged personal property without their written consent would effectively block any sale that Clark might negotiate. That possibility was never mentioned or remotely referred to prior to the completion of the sale to Weissberg. Aside from the fact that Weissberg paid to Clark $500,000.00 cash consideration and executed its note to the Investment Company for $148,000.00, upon which monthly installments of $4,000.00 have been paid, it has also paid to the Prudential Insurance Company, the holder of the first lien, $11,000.00 each month since April, 1961; has paid to the plaintiffs, Green and others, the sum of $4,700.00 each month; spent approximately $35,000.00 on improvements to the hotel property, and assumed and paid a $40,000.00 debt owed by the hotel to the Fort Worth National Bank. It can hardly be said that as a matter of law Weissberg had not relied to its prejudice on the delay of the plaintiffs to accelerate under the provisions of the chattel mortgage and declared their notes due and payable. In my opinion there is evidence in the record to justify the findings of waiver and estoppel.

The plaintiffs raised two other points which they say entitle them to accelerate and to a judgment foreclosing the liens secured by those notes as follows:

1. That the distribution of assets of the Clark Investment Company to A. R. Clark was a breach of paragraph (b) of the Loan Agreement which provided that while the plaintiffs' notes were unpaid, the total compensation by way of dividends, salaries, expenses or otherwise, that should be paid to Clark or to any other person in the ownership of Western Hills Hotel should be limited to $25,000.00 per year or not to exceed $50,000.00 per year, if the hotel is being maintained in a first class condition.

2. That the distribution of assets of Clark Investment Company to Clark was a breach of paragraph (e) of the Loan Agreement which provided:

"Company [A. R. Clark Investment Company] shall make no change in its capital structure without the prior written consent of sellers; provided, however, Company may distribute to Clark

all of its assets subject to its debts; * * *."

In respect to the first point, the trial court imposed upon Weissberg the duty to limit total withdrawals by it, or by its successors or assigns, from the operation of the hotel in conformity with the obligations imposed upon Clark by paragraph (b) of the Loan Agreement. The plaintiffs complained that since Weissberg had many stockholders, complete relief would require that these stockholders be included as persons also restricted from withdrawals along with Weissberg. The Court of Civil Appeals sustained that contention and reformed the judgment of the trial court to include all stockholders of Weissberg.

The complaint now is that the distribution to Clark by Clark Investment Company of the $500,000.00 received by Weissberg in consideration of the sale was such a breach of paragraph (b) of the loan agreement as would justify a judgment for the petitioners in the full amount of their notes and for foreclosure of their liens. I do not follow this reasoning. Paragraph (b) clearly referred to the net income and profits derived from the operation of the hotel and not to any profit that might have been received by Clark or Clark Investment Company by way of sale. This profit came not out of Western Hills, but was paid out of the assets of the Weissberg Corporation.

In my opinion the second point has no merit. The Clark Investment Company at all times was a corporation with a capital paid-in stock of only $1,000.00. What possible change in its capital structure would be detrimental to plaintiffs, especially so since the Court of Civil Appeals charged Clark with personal liability to the extent of $327,000.00, the amount of profits derived from the sale less the amount paid to the government as income tax and has placed an equitable lien on those funds in the plaintiff's favor. Thus, they not only have all of the security for the payment of these notes that they possessed prior to the sale from Clark to Weissberg, but additionally are secured by the equitable lien on funds which represent practically one-third of the total amount of the notes.

I would uphold the findings and conclusions of the trial court and deny the right of acceleration.

GRIFFIN, NORVELL and STEAKLEY, JJ., join in this dissent.